JOHN TAGART, ADMINISTRATOR OF SLONE, vs. THE STATE OF INDIANA.

1. Where the plaintiff and defendant were non-residents of this State, at the time of contracting a debt, and the defendant afterwards removes to this State, the statute of limitations does not begin to run in his favor, until he comes into this State: King vs. Lane, 7 Mo. Rep., 241.

Tagart, adm'r of Slone, vs. The State of Indiana.

## APPEAL from Jefferson Circuit court.

FRISSELL, for appellant.

The appellant, in this court relies on the statute of limitations:

1. It is insisted, that as to Slone, the statute of limitations commenced running on the 5th of April 1838, and the statute became a defence after the 5th of April 1848, more than two years before suit was instituted in the county court of Jefferson county.

2. The payment of interest, by the principal in the note, does not effect the rights of the security to plead the statute after the expiration of ten years.

3. Slone left Indiana without fraud or concealment, and with notice to the agent of the plaintiff that he was about to remove, and suit might have been instituted at any time: See Meroin, adm'r of Bates, vs. Bates, 13 Mo. R., 217; Stats. of Mo., "Limitations," art. 3, § 8.

BEAL, for respondent, says:

1. The statute of limitations effects only those who are within the jurisdiction of the courts of this State. A party, who has never been in the State, cannot claim any of the privileges or immunities of its laws. The rights of a non-resident commence only from the time of making his domicil here. He brings no rights from other States, nor can he claim the benefits arising from the laws of other States. The statute of limitations commences to run in his favor against all debts, &c., from the time of his removal, and will not be a bar until he has resided here five years in case of accounts, and ten years in case of notes, as the case may be. Slone first came to Missouri in March 1840, and died in the spring of 1849. Suit was instituted on the bond in September 1849. The statute had not barred the debt by a year: King vs. Lane, 7 Mo. Rep. 241. The time of the limitations depends upon the laws of the country in which the action is brought, and the remedy must be conformable to the *lex fori*: See 13 East 439. This case settles the doctrine, that a debt, contracted abroad by non-residents, is not effected by the statute of limitation in the form in which redress is sought. In a late case, 13 Mo. R., 159. this court inclined to that view of the statute of limitations. It would lead to confusion and endless enquiries into the laws of other countries, the distinctions and exceptions arising under the decisions of their courts, if our courts here would be reckless enough to apply the limitations of foreign statutes. So, the only safe rule is to commence to apply the statute from the time the party comes to the State. The statute, under this view, did not commence running in favor of Slone until March 1840, and would be a bar in March 1850.

2. The statute of limitations does not run against the State of Indiana, the payee on the bond, unless a State or sovereign power is expressly named in the statute of limitations, it is no bar: 7 Mo. 194.

At common law, there was no limit to the sovereign power, and, unless a State is expressly named, the common law would exempt a State from the bar.

A state has to act by agents. So many changes occur from deaths, removal and political ascendencies, that it would be impossible, many times, to collect State claims, if a rigid rule of limitations were enforced. A State cannot be as vigilant in following up debtors as individuals and would unjustly fall upon a State from unavoidable necessity. The law, then, cannot operate on claims of this class.

3. The judgment below is for the right party, independent of technical rules of construction. After two respectable courts of the county, where Slone lived for nine years, have decided for the plaintiff, the judgment will not be disturbed,

Tagart, adm'r of Slone, vs. The State of Indiana.

The consideration of the bond was loaned money, and presents the case in a favorable light. Slone was the security, and well knew the nature of his responsibility that in case of a failure of his principal to pay the bond he would have to pay it    Dixen made payments on the bond of interest and $100 principal in 1838–39–40 and '41.    These facts repel the idea of payment in full as the statutes of limitations raised: Revi. Stats. 1845, page 721, sec. 15, art. 3; Black. Com., vol. 3, p. 387; 4 T. R. 468.

Again suit was brought upon the bond in 1843, in Indiana, against the makers, and judgment was rendered against Dixen and Johnson.    Slone, being in Missouri, was not served with process as late as 1846, only three years before the institution of this suit.    Execution issued on the judgment and $25 coerced out of Johnson.    This rebuts the presumption raised by the policy of the statute.    We must conclude that the debt was unsatisfied, when we find a judgment and efforts made to collect it.    Wilson explains the reason that it could not be collected; that Dixen and Johnson had become insolvent, and that as soon as Slone's residence was known, the bond was forwarded for collection.

Under the circumstances of this case, it would operate hard on the plaintiff to lose the debt. Society in the western States is so given to imigration that it would defeat just claims to apply a rigid rule.    Often persons leave debts, liabilities or securities in the State from which they move; and where the debt is due to a State, her agents cannot exercise the same diligence in collection of her claims as we expect from parties beneficially interested.    Snapp, the first agent, had died, and the bond subsequently fell into the hands of Wilson, who made every exertion to get the debt, but all efforts failed, except to the amount of $25 00.

RYLAND, J., delivered the opinion of the court.

This was an action upon a penal bond for six hundred dollars, in favor of the State of Indiana, conditioned for the payment of three hundred dollars on the 6th of April 1838, by William Dixen, Peter Johnson and John Slone.    Dixen appears to be principal and Johnson and Slone securities.

The bond was exhibited for allowance on the 19th day of September 1849, and was allowed against Slone's estate at the September term 1850, of the Jefferson county court.    An appeal was taken to the circuit court, where judgment was again given against the estate, and the case is now brought before this court by appeal.

The defendant relies upon the statute of limitations.    All the interest was paid up to the 11th of April, 1841, and also a part of the principal by Dixon.    Upon the facts saved by the record, it appears that Slone left the State of Indiana in March 1840, in good circumstances, and removed to the State of Missouri; that his removal was open and notorious, and that the agent of the State of Indiana, in making the loan for which the bond in this action was executed, was present when Slone started, and knew where he was going.

A motion was made for new trial, on the ground of erroneous instructions given by the court, and because the judgment was contrary to law.    This motion was overruled and excepted to.    The court tried

the cause without a jury. The instruction complained of by the defendant, is in the following words: "That where plaintiff and defendant were non-residents of this State at the time of contracting the debt, and the defendant removes to this State, the statute of limitations does not begin to run in his favor until he comes to this State."

The question here presented to the court, is the same as that decided by this court in the case of King vs. Lane, 7 Mo. Rep. 240. The counsel for the defendant below, appellant here, insists upon a review of that decision, and contends that the clause in our statute of limitations, on which he rests his defence, was not with due consideration, properly construed by the court.

Let us see this clause—Statute of limitations, art. II, sec. 7, Digest of 1835, page 394. "If at the time when any cause of action, specified in this article, accrues against any person, he be out of this State, such action may be commenced within the times herein respectively limited, after the return of such person into the State, &c." This provision did not originate in our legislation; a similar one is found in the limitation statute of New York, passed in April, 1801. That section reads thus, "and if any person against whom any cause of any action shall accrue shall be out of this State at the time the same shall accrue, the person who shall be entitled to such action, shall be at liberty to bring the same within the times respectively above limited, after the return of the person so absent into this State." And New York copied this provision substantially from 4th Ann. Chap. 16, section 19, which is as follows: "That if any person or persons against whom there is or shall be any such cause of suit or action, (here follows a list of actions which I omit) be, or shall be at the time of any such cause of suit or action, given or accrued, fallen or come, beyond seas, that then such person or persons who is or shall be entitled to any such suit or action, shall be at liberty to bring the said actions against such person or persons, after their return from beyond seas; so as they take the same, after their return from beyond seas within such times, as are respectively limited for the bringing of the said actions before by this act, &c., &c.

The case of Duplien vs. De Rouex, which is cited by the court in the case of King vs. Lane, was determined by the Lord keeper at Hillary term, 1705. In this case the Lord keeper used the following language: "It is plausible and reasonable that the statute of limitations should not take place, nor the six years be running, until the parties come within the cognizance of the laws of England; but that must be left to the le-

gislature." In the same years, 1705, the 4th Ann. Chap. 16, was passed by the parliament.

The case of Ruggles vs. Keeler was decided in 1808. In this case, Kent, Ch. Just. says: "But a proviso in the statute of Ann, and which we have adopted in our act of limitations, saves the operation of the statute if the party shall be 'out of the State' at the time the cause of action arises against him, and the statute does not begin to run until after the return of the defendant." Whether the defendant be a resident of this State, and only absent for a time, or whether he resides altogether out of this State, is immaterial. He is equally within the proviso. If the causes of action arose out of the State, it is sufficient to save the statute from running in favor of the party to be charged until he comes within our jurisdiction. This has been the uniform construction of the English statutes, which also speak of the "return" of the party so absent from beyond seas. The word "return" has never been construed to confine the proviso to Englishmen, who went abroad occasionally. The exception has been considered as general, and extending equally to foreigners, who always reside abroad."

In the case of Tupper vs. Nash, 1 Caine's cases 402, the supreme court of New York decided, that they were bound to confine themselves to their own statute of limitations, and could not regard that of any other State. "Statutes of limitation (said the court) are municipal regulations, founded on local policy, which have coercive authority abroad, and with which foreign or independent governments have no concern."

In the case of Dwight, adm'r. vs. Clark, 7 Mass. Rep. 515, the action was on several promissory notes; the defendant plead non-assumpsit *infra sex annos*. The replication alleges, in substance, that at the time the cause of action accrued, the defendant was without the limits of this commonwealth; that he had left therein no property or estate that could by ordinary process of law be attached; and that he did not return into the commonwealth until six years befor the commencement of this action. The rejoinder alleges, in substance, that the defendant did not return into the commonwealth, not having been an inhabitant thereof, but an inhabitant of another State. To this there was a general demurrer and joinder thereto. The question is, whether the period of limitation commenced previous to the defendant's coming into the State. The court say, "we all think the case comes clearly within the exception; the replication states the very case, in all its parts, expressed in the act to constitute an exception. The defendant was without the limits of the commonwealth; nor did he leave any pro-

perty within it, that could be attached.   But it is said that by the words "leave" and "return" used in the act, it is evident, that the legislature intended to confine the exception to the inhabitants of the common-wealth.   We all, however, think it a much more reasonable construc-tion, that the exception was intended as general, and comprehending all persons who are without the commonwealth and have not attachable property within it, so that the statute shall not begin to run until the defendant is either  by his property or  his person subject  to original process.

This statute of Massachusetts is much stronger in favor of the views of the appellant's counsel in the case before us than our act of 1835.  Here is not only the  word "return" into the commonwealth, but the words "leave property, &c.," a  much stronger  expression to include the idea of inhabitation, removing or going out of and  returning again into  the commonwealth.   Yet the court upon solemn agreement adjudge the proviso to have a general meaning and extent to all persons non-residents of the commonwealth, and who have no attachable property therein.

In the case of Tisson vs. Bicknell, 6 New Hampshire, 557, the con-struction  of the statute of limitations of the State of New Hampshire came before the supreme court of  that State.   The third section of that act declares, "that if at  the time the cause  of action occured or afterwards, the defendant  resided without the limits of the State and did not leave property or estate therein, that could by the  common and ordinary process of law be attached, the plaintiff shall be at liberty to commence his action, within six years after the cause of action, exclu-sive of the time during which the defendant shall have resided without the limits of the State as aforesaid;" Richardson, Ch. Jus., in deliver-ing the opinion of the court, said: "But it is contended, that as the de-fendant  was never an inhabitant of this State, the case is not within the third section of the statute.  It is argued that the statute embraces only inhabitants of this State, who have gone abroad, and left no pro-perty,  that could be attached.   The statute speaks of their leaving property,  which certainly gives  some countenance to the supposition, that the  case  of inhabitants leaving the State was in the  immediate contemplation of those who made the act.   But that circumstance is much too slight to sustain a  construction so narrow as that for which the defendant's counsel contends.   Upon a similar exception in the statute  of Massachusetts it has  been decided, that the exception em-braces those who were never resident in the commonwealth," and refers to the case of Dwight, adm'r vs. Clark, above cited in this opinion, and to 11 Pick. 39.

This decision is in strict accordance with other decisions in analagous cases; 17 Mass. Rep. 180; Wilson vs. Appleton, 14 Mass. Rep. 203; Hall vs. Little, 3 Wilson 145; 2 W. Blacks. 723; 10 Johns. 465.

These decisions of the courts of England, Massachusetts, New York, and New Hampshire, upon statutes similar to ours, (and, indeed, some of the statutes holding out the idea of inhabitancey, much stronger than ours) have, and I think deserve to have the weighty consideration of this court upon the question before us. I do not feel authorized or disposed to overturn a former decision of this court, supported, as it is, by such authority.

The statutes of limitations of other States, will not be enforced here; our own statute must govern. See 3 Conn. R. 472; Medbury vs. Hopkins, 4 Conn. 47; Atwater's adm'r vs. Townsend, 3 Johns Chan. Rep. 97; Deconche vs. Savetier, 1 Gallison's Rep. 376; 2 Mass. Rep. 84; 17 Mass. Rep. 55; 1 Harris and Johns. Rep. 453; 4 Cow. 508 Andrews and Jerome vs. Heriot.

From a review of many cases upon this subject, I am unwilling now to overturn the construction of the statutes of limitations as given by the court in the case of King vs. Lane.

The case of Marvin, adm'r vs. Bates in 13 Mo. R. does not conflict with this view. Another and different subject matter was before the court in that case.

The statute of limitations did not, from the facts in this case, afford the defendant below a bar to the plaintiff's action. Sufficient time had not elapsed since the defendant's removal to Missouri.

I find no error in the instruction complained of by the defendant below.

The other judges concurring, the judgment below will be affirmed.