KING OF PRUSSIA, Plaintiff in Error, v. KUEPPER'S ADMINISTRATOR, Defendant in Error.

1. A foreign sovereign may maintain an action against a citizen of this state in the courts of this state.
2. By a law of the kingdom of Prussia, the king, upon refunding to the proper owners, under a law of the kingdom, moneys stolen or embezzled by an officer of the post office department, while the same were passing through said department, became subrogated to the rights of said owners against the embezzling officer ; *held*, that in case such embezzling officer should abscond from Prussia and come to this state, the king of Prussia may maintain an action against him in the courts of this state.

*Error to St. Louis Circuit Court.*

This was a suit brought by Frederick William IV, king of Prussia, against Felix Coste, administrator of Frederick Wil-

King of Prussia v. Kuepper's Adm'r.

liam Kuepper, deceased. The petition is as follows : " The plaintiff states that he is absolute monarch of the kingdom of Prussia, and as king thereof is the sole government of that country ; that he is unrestrained by any constitution or law, and that his will, expressed in due form, is the only law of that country, and is the only legal power there known to exist as law.

/ " The plaintiff further states that by the law of Prussia any money or its equivalent sent or transmitted through the royal post department of that country, or received to be so transmitted or sent by any duly authorized officer of said department, if lost, stolen, or embezzled, is to be refunded to the proper owners thereof by the plaintiff, through his officers and agents, and that such was the law on and long before the 10th April, 1849./ The plaintiff further states that the said Kuepper was on and for a long time before the 10th April, 1849, the plaintiff's servant and post officer at Wermelskirchen, in the kingdom of Prussia, and that while said Kuepper was such post officer, he received, in his official capacity, large sums of money, or its equivalent, portions of which money, or its equivalent, were transmitted through said department, and received by said Kuepper as aforesaid, to be delivered by him to the true owners thereof at Wermelskirchen, and portions of which were deposited with him as aforesaid by persons at Wermelskirchen, to be transmitted by him through said post department to persons at various places ; and the plaintiff, if required, is willing and ready to give a statement of each item, by and to whom sent, when, &c. The whole amount of the moneys or its equivalent, so received by said Kuepper, was seven thousand four hundred German dollars, or thereabout, which, in the currency of the United States, are equal to sixty-nine cents each.

" The plaintiff further says that on or about the 10th April, 1849, said Kuepper did abscond with all said sums of money, and did embezzle and convert the same to his own use, and secretly fled and escaped from the said kingdom and came to St. Louis, Missouri, where he died in the summer of 1849, and

letters of administration on his estate were duly granted to the defendant (Coste) by the St. Louis probate court, on the thirty-first day of July, 1849. The plaintiff further states that he has, according to the law and custom of his said kingdom, duly refunded and paid to the various and proper owners thereof the various sums of money or its equivalent, stolen and embezzled from them respectively by said Kuepper as aforesaid, and that he therefore has, according to said law and custom, and by justice and right ought to and has a just and legal demand against the defendant, for the sums of money by him and his officers so refunded and paid.

" The plaintiff says, therefore, that the defendant justly owes him said sum of money, and he estimates his damages for said money and interest at the sum of seven thousand dollars, for which last sum he asks judgment against the defendant."

The defendant demurred to this petition, and assigned the following reasons : That the petition does not state facts sufficient to constitute a cause of action ; that it does not state any legal privity between the plaintiff and defendant ; that it does not state any legal right in the plaintiff to recover the said sums of money alleged to have been embezzled from certain persons living in the kingdom of Prussia ; that it does not state any legal right in the plaintiff to recover for the money embezzled by the said Kuepper, which, at the time of the embezzlement, belonged to other persons than the plaintiff ; that the plaintiff was not under any legal obligation to pay to the persons from whom Kuepper embezzled property as alleged, and the payment of such losses was merely voluntary, and that the plaintiff has no legal capacity to sue in this court ; wherefore the defendant prayed judgment and for costs.

The court below sustained the demurrer, and gave judgment for the defendant, to which plaintiff duly excepted. Plaintiff brings the case here by writ of error.

*Gibson*, for plaintiff in error, cited in support of the petition, the following authorities : Sturges v. Crowningshield, 4 Wheat. 193 ; 1 Kent Comm. 395 ; Delafield v. State of Illi-

nois, 2 Hill, 159; 26 Wend. 192; State of Indiana v. Woram, 6 Hill, 35; 5 Cranch, 303; Cherokee Nation v. Georgia, 5 Peters, ; King of Spain v. Oliver, 2 Wash. C. C. 432; King of Spain v. Hullet & Co., 1 Dow & Clark, 174; 1 Clark & Fin. 133; Columbian Government v. Rothchilds, 1 Sim. 94; Hullet v. King of Spain, 2 Bligh's N. R. 31; Nabob of Arcot v. East India Co. 2 Brown's Ch. 180; Duke of Brunswick v. King of Hanover, 1 Chit. Eq. Dig. 144; Rothchilds v. Queen of Portugal, 1 id. 115.

*B. A. Hill*, with whom was *Edward Bates*, for defendant in error. 1. Plaintiff sues defendant upon the hypothesis that a larceny by Kuepper, the intestate, while postmaster, subrogates the plaintiff to the right of action, which the parties losing the money would have had at common law against the thief who stole the property. 'At common law, each party from whom property was stolen had an action of trover or trespass against the thief. The action here is in the nature of an assumpsit for the moneys which the king voluntarily paid in the exercise of his will as absolute monarch, to the persons from whom Kuepper stole the various sums of money. It is not pretended that there is any legal privity between these parties known to our law; but the will of the king is averred to be law in Prussia and to give a right of action here. No action can be maintained in our courts except upon a legal liability recognized as such by our laws. There must be a legal privity to raise the assumpsit or demand averred in the petition. The legal cause of action appears to be in various other persons than the king, and they are the only persons who could sue Kuepper in our courts. 2. The king and Keupper bear the relation of master and servant, and the servant commits a tort wilfully upon the property of certain persons. The master, by our law, is not liable for the wilful *tort* of his servants; the persons who lost their money, by the larceny of Kuepper, could not have maintained an action against the king, his master, therefor. If the larceny committed by Kuepper, in the employment of the king, was an injury to the king as a person or as a corpora-

tion, an action might be sustained for such injury; but as, upon a money demand in assumpsit, the gravamen of such action would be the misconduct of the servant in the employment specified and the *consequential* injury therefrom, the king, in such case, would sue for the injury done to himself, not for the injuries Kuepper had done to other persons, as he has in this action. 3. By the payment of the moneys stolen by Kuepper to the parties from whom it was stolen, the king acquired no right of action against Kuepper at common law, and under our statute of 1849, it was necessary for a party to procure an assignment from the original party in interest before he brings suit. A voluntary payment, as in this case, gives no right of action. It follows necessarily from these premises that, under our laws, the king, as a person, has no right of action for the causes specified. 4. It is affirmed in the petition that the will of the King of Prussia is law there, and that by the exercise of his will, as *absolute monarch*, he assumed the payment of the moneys stolen by Kuepper, and therefore has become subrogated to the right of action existing in the various persons robbed; and the claim here is to recover, by virtue of his office as an *absolute monarch*, upon an obligation, that he has so exercised his will as to create a law under which the defendant is liable. Defendant denies the right of any party to recover upon such grounds. If the King of Prussia sues in a state court, *he must waive his* sovereignty, and claim in accordance with our laws and recover by virtue of some legal demand recognized as such in our jurisprudence. But the claim of the plaintiff is based upon his rights as an *absolute monarch*, not as a person; he does not *waive his sovereignty*, but asserts his right to recover by virtue of his sovereignty, and it is upon this ground *alone* that the recovery can be had. If the person holding the office of King of Prussia held a demand against any other person, or against a corporation, recognized by our laws as a legal demand, he could sue as a person in our courts. It is doubtful whether he could sue in the capacity of king as a corporation sole; but the authori-

ties seem to authorize it in cases where he waives his sovereignty, and his right of recovery is recognized by our laws. But there is no case in which it has been decided that a foreign prince or potentate can recover in a state court upon a demand not recognized by our laws, by virtue of a right of sovereignty. A trial of such a cause would involve the examination and adjudication of and upon the sovereign powers of the foreign potentate, and the validity of the decrees of such potentate, as an absolute or restricted monarch, and the rights and privileges of such monarch as king of a foreign state, under treaties with the republic of the United States. These are questions that the constitution designed should be tried and determined in the federal courts of the republic. The state courts never had any jurisdiction of such cases or questions prior to the adoption of the constitution of the United States. (See Const. of U. S. art. 3, secs. 1, 2; 83d art. by Hamilton, in the Federalist; Martin v. Hunter, 1 Wheat. 304, 333; 1 Curtis' Commentaries, p. 156-7-8-9 and 127.) The King of Prussia, in suing in a court of the state of Missouri upon a demand arising out of the alleged sovereign right of one absolute monarch to create a legal liability, *by the exercise of his will*, has chosen a forum where such questions can not be tried. If by treaty or the laws of nations such a demand could be enforced, there is but *one forum* where the questions involved can be determined, and that forum is the federal court. If it were not so, there might be conflicting decisions in different states, upon questions of a national character. The cases relied upon by the plaintiff are not in point. They only apply to actions in which the king or foreign state, or one of the sister states, *waives the right of sovereignty*, and seeks to recover upon a demand recognized by our laws. (Delafield v. State of Illinois, 26 Wend. 210; same case in error, 2 Hill, N. Y., 161; State of Indiana v. Woram, 6 Hill, N. Y., 35; Columbian Government v. Rothschilds, 1 Simons, 52-3, reported in 2 vol. Eng. Cond. Ch. 52-3.) The case of Delafield v. The State of Illinois, (26 Wend. 212,) is an authority in favor of defendant. The

distinction must be carefully observed between the jurisdiction of the court of king's bench in England, and the state courts of this republic. There is no resemblance between the powers of the high court of chancery in Great Britain and the court of king's bench, and our state courts. The former are national courts, competent to decide upon questions involving the construction of treaties, and the law of nations. The cases cited from the English books do not touch the question raised by the defence in this action. (See Spanish Ambassadors v. Pountes, 1 Roll. Rep.; same v. Jollife, Hobart, 78 and 113; same v. Gifford, Moore, 850; Ogden v. Folliatt, 3 Term Rep. 726; Nabob of the Carnatie v. East India Co. 1 Ves. jr. 371; S. C. 2 Ves. 56; see also King of Spain v. Oliver, 1 Peters, C. C. R. 276; Article No. 33 of Federalist; King of Spain v. Machado, 4 Russ. 238, reported 3d Eng. Cond. Ch. R. 643; see 1 Kent Comm. 315 and cases cited; id. 316 and 318.) The plaintiff claimed his right under the treaty between the United States and Prussia and the law of nations. The jurisdiction of the federal courts is therefore exclusive, and the judgment should be affirmed.

SCOTT, Judge, delivered the opinion of the court.

This case comes up on a demurrer, and raises the question whether a foreign sovereign can sue in our courts. It seems to be now well settled in England that a foreign sovereign can sue in her courts both at law and in equity. In the case of Hullet & Cò. v. The King of Spain, Lord Redesdale said: "I have no doubt but a foreign sovereign may sue in this country, otherwise there would be a right without a remedy. He sues here on behalf of his subjects, and if foreign sovereigns were not allowed to do that, the refusal might be a cause of war. (1 Dow & Clark, 175; The King of Spain v. Machado, 3 Con. Eng. Chan. 645; 1 Clark & Finnelly, 333; The Columbian Government v. Rothschilds, 2 Con. Eng. Chan. 48.)

Kings have been allowed to sue in the United States. In the

case of the King of Spain v. Oliver, (1 Pet. C. C. R. 276,) the suit was entertained without question as to the right of a foreign sovereign to sue. So the case of the Republic of Mexico v. Arrangois and others (11 How. Prac. Rep. 1) was entertained by the courts of New York. In our courts, a writ in the name of the state of Indiana was brought and passed through all of them, without any question as to the right to do so. (Tagart v. State of Indiana, 15 Mo. 209.)

If the subjects of foreign governments will contract obligations or affect themselves with liabilities to their kings or princes, and afterwards migrate to the United States, there is' nothing in the nature of our institutions which shields them from their just responsibilities. While our government grants the rights and privileges of citizenship to all foreigners who are naturalized under our laws, there is neither policy nor justice in screening them from the civil liabilities which they have contracted with the government to which they were once subject. Our tribunals afford no assistance in the enforcement of the penal codes of foreign nations, nor would they aid despotic rulers, in the exercise of an arbitrary power, in making special and retrospective laws affecting foreigners residing here, who were once their subjects. But when laws have been made abroad, and debts have been contracted under those laws, there is no reason for refusing our assistance in their collection. Though foreign laws may be enacted by a power and in a way inconsistent with the spirit of our institutions, that is no reason why they should not be enforced against those who have incurred responsibilities in respect of them. Foreign nations have the same right to determine the form of government most conducive to their happiness that we have, and to deny the validity of their laws, because they have not been made in a manner conformable to our notions of government, would be to destroy all comity among nations and introduce endless wars and quarrels. The averments in the petition show that by the laws of Prussia, the defendant's intestate was indebted to his sovereign, and he should be made to answer for it.

It was maintained that this suit should have been brought in the courts of the United States, as the constitution of the United States expressly provides "that the judicial power shall extend to all cases between a state or the citizens thereof, and foreign states, citizens or subjects."

The government of the United States being entrusted with the power of peace and war, it was necessary to invest it with authority to establish tribunals to which foreign states or subjects might resort for injuries sustained by the conduct of those residing within the limits of the United States. For the judgments of tribunals thus established, the United States would be responsible to foreign states. But if they, passing by the courts created by the general government for the redress of grievances they may have sustained at the hands of citizens of the United States, will litigate their rights in courts for whose conduct the United States are not responsible, if they should be dissatisfied with the measure of justice meted to them by the courts, they have no cause of complaint against the federal government. The ready answer to any remonstrances made on that score, would be that there should have been a resort to the tribunals established by the United States. The foreign prince has the right to resort to the courts of the general government; this is a privilege the constitution and laws secure to him; but he may renounce it like any other privilege, and litigate his rights in the state courts.

Whilst commentators on the constitution maintain that it is competent for congress to vest all of the judicial powers of the United States exclusively in tribunals of its own creation, it is nevertheless admitted that this has not been done, and that the state courts, in cases in which they had cognizance before the adoption of the federal constitution, may, concurrently with the courts of the United States, still entertain jurisdiction.

The state courts, undoubtedly, before the existence of the federal government, had cognizance of causes in which foreign states were plaintiffs. That jurisdiction remains, unless it has been taken away by the constitution and laws of the United

States.   The grant of judicial powers by the constitution, in some cases, is exclusive ; in others, it is concurrent at the will of congress ; that is, congress may make it exclusive or concurrrent, as it seems best.   In cases in which the state courts had cognizance before the adoption of the constitution of the United States, that jurisdiction remains unless it is taken away. Congress has conformed its action to this principle, and has suffered a portion of the judicial powers of the United States to be exercised by the state courts. (1 Kent, 398 ; Story's Comm. § 1784.)   The jurisdiction, in cases of the character of that under consideration, has not been exclusively vested in the federal courts ; hence the state courts may still exercise jurisdiction in all such cases.

With the concurrence of the other judges, the judgment will be reversed, and the cause remanded.