RUSSIAN SOCIALIST FEDERATED SOVIET REPUBLIC, Appellant, *v.* JACQUES R. CIBRARIO et al., Respondents.

**Parties — capacity to sue — comity — action by plaintiff as a sovereign state — comity of nations defined — such relation does not exist until a foreign government has been recognized by the United States — whether plaintiff is a sovereign state is a question to be determined by the legislative or executive department of the government, not a question for the courts — the department of state having refused to recognize the plaintiff as an existing government, plaintiff cannot maintain an action in the courts of this state.**

1. Comity may be defined as that reciprocal courtesy which one member of the family of nations owes to the others. What is termed the comity of nations is the formal expression and ultimate result of that mutual respect accorded throughout the civilized world by the representatives of each sovereign power to those of every other in considering the effects of their official acts. Its source is a sentiment of reciprocal regard, founded on identity of position and similarity of institutions.

2. Jurisdiction depends upon the law of the forum and this law in turn depends upon the public policy disclosed by the acts and declarations of the political departments of the government; but there is no precedent that a power not recognized by the United States may seek relief in our courts. Such intimations as exist are to the contrary. Statements are that " a recognized government may be a plaintiff."

3. A foreign power brings an action in our courts not as a matter of right. Its power to do so is the creature of comity. Until such government is recognized by the United States, no such comity exists. Recognition and consequently the existence of comity is purely a

matter for the determination of the legislative or executive departments of the government. Who is the sovereign of a territory is a political question. In any case where that question is in dispute the courts are bound by the decision reached by those departments.

4. The present Russian government, the " Russian Socialist Federated Soviet Republic " has not yet been recognized by the determination of the legislative or executive department of the United States government. The department of state not only refuses to recognize it but gives cogent reasons for its refusal, and hence it is impossible to hold that to-day any such relations exist between the United States and Russia as call upon our courts to enforce rules in favor of the latter depending upon the comity of nations. It follows, therefore, that the Russian Socialist Federated Soviet Republic cannot maintain an action in the courts of this state.

*Russian Republic* v. *Cibrario*, 201 App. Div. 888, affirmed.

(Argued January 9, 1923; decided March 6, 1923.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 16, 1922, affirming a judgment in favor of defendants entered upon an order of Special Term sustaining a demurrer to and directing a dismissal of the complaint.

*Osmond K. Fraenkel* and *Charles Recht* for appellant. The Soviet government as a *de facto* government is such a legal entity as may sue. (*City of Berne* v. *Bank of England*, 9 Ves. 347; *King* v. *Oliver*, 14 Fed. Cas. 578; *Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *Jones* v. *United States*, 137 U. S. 202; *Underhill* v. *Hernandez*, 168 U. S. 250; *Ricard* v. *Am. Mutual Co.*, 246 U. S. 304; *Agency, etc.,* v. *American Can Co.*, 258 Fed. Rep. 363; *Republic of Honduras* v. *Soto*, 112 N. Y. 310; *State of Yucatan* v. *Argumedo*, 92 Misc. Rep. 547; *Waldes* v. *Basch*, 109 Misc. Rep. 306.)

*Daniel P. Hays* for respondents. The " Russian Socialist Federated Soviet Republic," never having been recognized as a sovereignty by the executive or legislative departments of the United States government, has no capacity to sue

in the courts of the United States, or of any of the states. (*Taylor* v. *Barclay*, 2 Sim. 213; *Jones* v. *United States*, 137 U. S. 202; *Underhill* v. *Hernandez*, 168 U. S. 250; *Ricaud* v. *American Metal Co.*, 246 U. S. 304; *Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *Republic of Mexico* v. *De Arangoiz*, 5 Duer, 634; *Republic of Honduras* v. *Soto*, 112 N. Y. 310; *State of Yucatan* v. *Argumedo*, 92 Misc. Rep. 547; *Waldes* v. *Basch*, 109 Misc. Rep. 306; 191 App. Div. 904; *W., etc., R. Co.* v. *Dalton Marble Works*, 122 Ga. 774.) Although the Soviet government may be a *de facto* government, in so far as its internal affairs are concerned, this does not in any way clothe it with external sovereignty which requires recognition by other states, nor give it the right to the comity of recognition so as to entitle it to sue in the courts of a foreign state. (Wheat. Internat. Law, 315, 317.)

ANDREWS, J. In *Wulfsohn* v. *Russian Federated Soviet Republic* (234 N. Y. 372) we held that our courts would not entertain jurisdiction of an action brought without its consent against an existing foreign government, in control of the political and military power within its own territory, whether or not such government had been recognized by the United States. We have now to determine whether such a government may itself become a plaintiff here.

If recognized, undoubtedly it may. (*Republic of Honduras* v. *De Soto*, 112 N. Y. 310; *United States of America* v. *Wagner*, L. R. 2 Ch. App. 582; *King of Spain* v. *Machado*, 4 Russ. 560; *King of Prussia* v. *Kuepper*, 22 Mo. 550.) Conceivably this right may depend on treaty. But if no treaty to that effect exists the privilege rests upon the theory of international comity. This is so with regard to all foreign corporations. (*Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166; *Bank of Augusta* v. *Earle*, 13 Pet. 519; *National Telephone Mfg.*

17

*Co.* v. *DuBois,* 165 Mass. 117.) Their power to sue may be regulated as is done by section 15 of our General Corporation Law (Cons. Laws, ch. 23). (*Paul* v. *Virginia,* 75 U. S. [8 Wall.] 168.) And except as limited by constitutional provisions the same thing is true of those not citizens of our state. Much more true is it that the right of a foreign government to sue is likewise based upon the same consideration. Neither a natural person nor a corporation, ordinarily we would not recognize it as a proper party plaintiff. (*W. & A. R. R. Co.* v. *Dalton Marble Works,* 122 Ga. 774.) It represents, however, the general interests of the nation over which it has authority. We permit it to appear and protect those interests as a body analogous to one possessing corporate rights, but solely because of comity. (*Republic of Honduras* v. *De Soto,* 112 N. Y. 310; *Hullet & Co.* v. *King of Spain,* 1 Dow & Clark, 169, 175; *Duke of Brunswick* v. *King of Hanover,* 6 Beav. 1, 37; *The Sapphire,* 78 U. S. [11 Wall.] 164.)

Comity may be defined as that reciprocal courtesy which one member of the family of nations owes to the others. It presupposes friendship. It assumes the prevalence of equity and justice. Experience points to the expediency of recognizing the legislative, executive and judicial acts of other powers. We do justice that justice may be done in return. " What is termed the comity of nations is the formal expression and ultimate result of that mutual respect accorded throughout the civilized world by the representatives of each sovereign power to those of every other in considering the effects of their official acts. Its source is a sentiment of reciprocal regard, founded on identity of position and similarity of institutions." (*Fisher, Brown & Co.* v. *Fielding,* 67 Conn. 91, 108.) As defined by Webster comity " is in general terms that there are between nations at peace with one another rights both national and individual resulting from the comity or courtesy due from one friendly nation to another. Among these is the right

to sue in their courts respectively." (6 Webster Works, 117.) It may, however, not be demanded as a right. It is yielded as a favor. Not an arbitrary favor. Nor is it the favor of the courts. "It is not the comity of the courts but the comity of the nations that is administered." (*Bank of Augusta* v. *Earle,* 13 Pet. 519.) Rules of comity are a portion of the law that they enforce. Precedents mark the line that they should follow. Both in England and in the United States so universally and for such a length of time have actions by alien corporations and individuals been allowed that the right to bring them in a proper case has become fixed. Unless restrained by legislative fiat no court may now deny it. (*Hollis* v. *Drew Theological Seminary,* 95 N. Y. 166, 175; *Stone* v. *Penn Yan, K. P. & B. Rwy. Co.,* 197 N. Y. 279; *Christian Union* v. *Yount,* 101 U. S. 352.) So long as the plaintiff does not reside in a country at war with the United States we inquire no further. The original basis of the right has fallen into the background. If trade is permitted between him and ourselves we do not ask whether he comes from Mexico or from France. But no like current of authority controls us in the case before us. Undisturbed the rule of comity is our only guide. This rule is always subject, however, to one consideration. There may be no yielding, if to yield is inconsistent with our public policy. We might give effect to the French decree in *Gould* v. *Gould* (235 N. Y. 14) only because it was consonant with our theories of marriage and divorce. Such public policy may be interpreted by the courts. It is fixed by general usage and morality or by executive or legislative declaration. Especially is the definition of our relations to foreign nations confided not to the courts, but to another branch of the government. That branch determines our policy toward them. It only remains for the courts to enforce it.

The use of the word " comity " as expressing the basis

of jurisdiction has been criticized. It is, however, a mere question of definition. The principles lying behind the word are recognized. Whether or not we sum them up by one expression or another the truth remains that jurisdiction depends upon the law of the forum and this law in turn depends upon the public policy disclosed by the acts and declarations of the political departments of the government.

Does any rule of comity then require us to permit a suit by an unrecognized power? In view of the attitude of our government should we permit an action to be brought by the Soviet government? To both queries we must give a negative answer.

We may state at the outset that we find no precedent that a power not recognized by the United States may seek relief in our courts. Such intimations as exist are to the contrary. Statements are that " a recognized government may be a plaintiff." (*Republic of Honduras* v. *De Soto,* 112 N. Y. 310; *United States* v. *Wagner,* L. R. 2 Ch. App. 582, 589.) In *King of Spain* v. *Oliver* (14 Fed. Cas. 577) the Circuit Court noted the question but refused to decide it. In *City of Berne* v. *Bank of England* (9 Ves. Jr. 347) Lord Eldon expressed great doubt. So in *Dolder* v. *Lord Huntingfield* (11 Ves. Jr. 283). In *The Penza* (277 Fed. Rep. 91) the present plaintiff was refused relief.

What then is the meaning and effect of recognition in its relation to comity? It is difficult to find a clear discussion of this question, either in reports or in text-books. Where a new government has seized power " no official intercourse is possible between the powers refusing recognition and the state concerned." " Through recognition the other states declare that they are ready to negotiate with such individual (a new ruler) as the highest organ of his state." (Oppenheim International Law [3d ed.], vol. 1, sections 77, 342.) Speaking of the recognition of a new state Wheaton (International Law

[2d ed.], p. 39) says: " So long, indeed, as the new state confines its action to its own citizens and to the limits of its own territory, it may well dispense with such recognition. But if it desires to enter into the great society of nations, all the members of which recognize rights to which they are mutually entitled, and duties. which they may be called upon reciprocally to fulfil, such recognition becomes essentially necessary to the complete participation of the new state in all the advantages of this society.  *  *  *  The new state becomes entitled to the exercise of its external sovereignty as to those states only by whom that sovereignty has been recognized." In Hyde's International Law (Vol. 1, sec. 37) is the statement that " the mode of recognition is not material, provided there be an unequivocal act indicating clearly that the new state is dealt with as such and is deemed to be entitled to exercise the privileges of statehood in the society of nations."

More assistance may be found in the reasons underlying various decisions of the courts as to the effect to be given to the acts of foreign governments. This effect depends upon our acknowledgment of the comity of nations. " The principle that the conduct of one independent government cannot be successfully questioned in the courts of another is as applicable to a case involving the title to property brought within the custody of a court such as we have here, as it was held to be to the cases cited, in which claims for damages were based upon acts done in a foreign country, for it rests at last upon the highest considerations of international comity and expediency." (*Oetjen* v. *Central Leather Co.*, 246 U. S. 297, 303; *Mighell* v. *Sultan of Johore*, 1 Q. B. 1894, p. 149; *The Parlement Belge*, 5 Pro. Div. 1880, p. 197.) Therefore, where comity exists between two nations and no question of public policy arises this rule is invariable. Yet in specific cases the question of recognition is thought controlling — recognition existing at the time the alleged

wrongful act was done, or recognition later which relates back to that time. (*Oetjen* v. *Central Leather Co.*, *supra; Underhill* v. *Hernandez*, 168 U. S. 250; *Ricaudo* v. *American Metal Co.*, 246 U. S. 304; *The Gagara*, L. R. Pro. Div. 1919, p. 95; *The Annette*, Id. p. 105.) A most interesting case is *Luther* v. *Sagor* (3 K. B. 1921, 532). The Soviet republic seized personal property belonging to the plaintiff. Then sold to the defendant it was imported into England. There the plaintiff brought an action to recover it. The plaintiff succeeded in the lower court, there being no proof of the recognition of the Russian government. Later such recognition occurred and the judgment because of that fact was reversed on appeal. In the course of his opinion, SCRUTTON, L. J., says the title to the goods coming into the hands of a purchaser from the Russian government cannot be questioned. " This immunity follows from recognition as a sovereign state. Should there be any government which appropriates other persons' property without compensation the remedy appears to be to refuse to recognize it as a sovereign state. Then the courts could investigate the title without infringing the comity of nations." Why? Obviously because in the absence of recognition no comity exists.

We reach the conclusion, therefore, that a foreign power brings an action in our courts not as a matter of right. Its power to do so is the creature of comity. Until such government is recognized by the United States, no such comity exists. The plaintiff concededly has not been so recognized. There is, therefore, no proper party before us. We may add that recognition and consequently the existence of comity is purely a matter for the determination of the legislative or executive departments of the government. Who is the sovereign of a territory is a political question. In any case where that question is in dispute the courts are bound by the decision reached by those departments. (*Jones* v. *U. S.*, 137

U. S. 202; *Luther* v. *Sagor, supra,* 556.) It is not for the courts to say whether the present governments of Russia or Mexico or Great Britain should or should not be recognized. They are or they are not. That is as far as we may inquire. Nor is anything here decided inconsistent with *Wulfsohn* v. *Soviet Republic (supra).* Upon the facts in that case, if the defendant was not an existing government it might not be sued. There was no party before the court. If it were, as was alleged and admitted, the same result followed not because of comity, but because an independent government is not answerable for its acts to our courts.

We are the more ready to reach this conclusion because to hold otherwise might tend to nullify the rule that public policy must always prevail over comity. More than once during the last seventy years our relations with one or another existing but unrecognized government have been of so critical a character that to permit it to recover in our courts funds which might strengthen it or which might even be used against our interests would be unwise. We should do nothing to thwart the policy which the United States has adopted. Yet unless recognition is the test of the right to sue we do not see why Maximilian as emperor of Mexico might not have maintained an action here.

With regard to the present Russian government the case is still stronger, even did comity not depend on recognition. We not only refuse to recognize it. Our state department gives the reasons. Secretary Colby has stated them in an official note, dated August 10, 1920. He begins by saying that our government will not participate in any plan for the expansion of the armistice negotiations between Russia and Poland into a general European conference, " which would in all probability involve two results, from both of which this country strongly recoils, viz.: The recognition of the Bolshevist regime and a settlement of the Russian problem

almost inevitably upon the basis of a dismemberment of
Russia." He continues, " We are unwilling that while
it is helpless in the grip of a non-representative govern-
ment whose only sanction is brutal force, Russia shall be
weakened still further by a policy of dismemberment,
conceived in other than Russian interests. * * * The
Bolsheviki, although in number an inconsiderable minority
of the people, by force and cunning seized the powers and
machinery of government, and have continued to use
them with savage oppression to maintain themselves in
power. * * * It is not possible for the government
of the United States to recognize the present rulers of
Russia as a government with which the relations common
to friendly governments can be maintained. * * *
The existing regime in Russia is based upon the negation
of every principle of honor and good faith, and every
usage and convention, underlying the whole structure
of international law, the negation, in short, of every
principle upon which it is possible to base harmonious
and trustful relations, whether of nations or of individuals.
The responsible leaders of the regime have frequently
and openly boasted that they are willing to sign agree-
ments and undertakings with foreign powers while not
having the slightest intention of observing such under-
takings or carrying out such agreements. * * * They
have made it quite plain that they intend to use every
means * * * to promote revolutionary movements
in other countries. * * * In the view of this govern-
ment, there cannot be any common ground upon which
it can stand with a power whose conceptions of inter-
national relations are so entirely alien to its own, so
utterly repugnant to its moral sense. There can be no
mutual confidence or trust, no respect even, if pledges
are to be given and agreements made with a cynical
repudiation of their obligations already in the mind of
one of the parties. We cannot recognize, hold official
relations with, or give friendly reception to the agents

of a government which is determined and bound to conspire against our institutions, whose diplomats will be the agitators of dangerous revolt, whose spokesmen say that they sign agreements with no intention of keeping them."

Our government has not receded from this position. Secretary Hughes in rejecting trade proposals of the Soviet, said on March 25, 1921, " It is only in the productivity of Russia that there is any hope for the Russian people, and it is idle to expect resumption of trade until the economic bases of production are securely established. Production is conditioned upon the safety of life, the recognition by firm guarantees of private property, the sanctity of contract and the rights of free labor," and he postpones any consideration of trade relations until such time as our government has convincing evidence of fundamental changes that will fulfill these conditions.

In the face of these declarations it is impossible to hold that to-day any such relations exist between the United States and Russia as call upon our courts to enforce rules in favor of the latter depending on the comity of nations.

The judgment appealed from should be affirmed, with costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur.

Judgment affirmed, etc.