RUSSIAN REINSURANCE COMPANY and Another, Appellants, *v.* FRANCIS R. STODDARD, JR., as Superintendent of Insurance of the State of New York, and Another, Respondents.

Third Department, January 7, 1925.

Insurance — action by Russian insurance company, which has discontinued business which it was authorized to do here, to recover securities deposited by it as its American capital — company began business here in 1907 — defense that company has been dissolved and property confiscated by so-called Russian Soviet Republic — so-called government of Russia has not been recognized by United States — decrees and orders of said government will not be given validity by our courts — company still exists — answer set up that plaintiff was not corporation because it had been dissolved by so-called Russian government — plaintiff, under Rules of Civil Practice, rule 93, only required to prove that the corporation had not been dissolved — holdover directors of insurance company had power to act and to hold meetings outside Russia — evidence does not establish that laws of Russia are different from our laws in that regard — deed of trust under which securities are held was legally revoked and corporation through its directors is entitled to securities — plaintiff having been organized before present so-called Russian government existed can sue here under General Corporation Law, § 45 — agent of corporation in this country not improperly joined as party plaintiff — if agent was improperly joined objection at trial was too late under Civil Practice Act, § 278, and Rules of Civil Practice, rules 102 and 105.

In an action by a Russian insurance company, which was authorized to do business in this State and which commenced business here in 1907, to recover securities deposited by it under a deed of trust for the protection of its policyholders and creditors, a defense that the corporation had been dissolved by the so-called Russian Soviet Republic and its property confiscated is insufficient, for, since the so-called Russian government has not been recognized by our government, the courts of this State will not give effect to its decrees and orders, especially where its decrees and orders are not in accordance with our public policy.

Therefore, the corporation being in existence so far as our courts are concerned and its business having been wound up in this State, it is entitled to maintain an action to recover the deposited securities.

The answer which set up that the plaintiff was not a corporation because it had been dissolved by the so-called Russian government imposed upon the plaintiff under rule 93 of the Rules of Civil Practice, the burden merely of showing that the decrees of the so-called Russian government will not, be given validity by

our courts and the plaintiff did not enlarge that issue by going unnecessarily into further proofs of its existence based upon presumption and estoppel; but though the plaintiff was not required to give additional proof, the proof which it did give in that respect established its present existence.

The evidence was insufficient to show that the laws of Russia in reference to the power of holdover directors to conduct the affairs of the corporation and the power of the directors to hold meetings outside of Russia were different from our laws and, therefore, applying the rule that unless a contrary law is shown our law will be presumed to be the law of Russia, it must be held that the holdover directors had power to act for the corporation and that they had power to hold meetings in Paris, France.

The plaintiff corporation being still an existing corporation as far as our courts are concerned and its business having been wound up in this country, the directors had the power to revoke the deed of trust under which the securities were held and are now entitled to receive those securities on behalf of the corporation subject only to protecting some disputed claims.

The plaintiff having been organized prior to the present so-called Russian government and having been authorized to conduct business in this State, it is a foreign corporation unaffected by the decrees of the Russian Soviet Republic and may sue in our courts under section 45 of the General Corporation Law.

While the plaintiff corporation is the real party in interest, its agent in this country who acts for it under power of attorney was not improperly joined as a plaintiff in this action in equity, since it appears that he is a resident of this State and had, under the power of attorney, the right to sue in his own name or in the name of the company and since it further appears that it may be desirable to bind him personally by the judgment of the court.

But if the plaintiffs' agent was improperly joined as a party plaintiff the objection to such misjoinder at the trial was too late under section 278 of the Civil Practice Act and rules 102 and 105 of the Rules of Civil Practice.

APPEAL by the plaintiffs, Russian Reinsurance Company and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Albany on the 9th day of October, 1924, upon the decision of the court rendered after a trial before the court without a jury at the Albany Trial Term, adjourned to Chambers at Troy, N. Y.

The action, which was begun February 29, 1924, was brought to recover certain funds and securities which the plaintiff company, a Russian corporation, had previously deposited, as its American capital, with the defendant Bankers Trust Company, under a trust agreement, for the protection of the United States policyholders and creditors of the plaintiff company. The plaintiff company has ceased the transaction of business in the United States and has paid all its obligations to United States policyholders and creditors, with the exception of certain claims in dispute of comparatively small amount. Therefore, it seeks the return of its funds and securities held by the defendant Bankers Trust Company subject to any provision necessary to fully secure the payment of any obligations arising out of claims in dispute. The Superin-

tendent of Insurance has been made a party defendant for the reason that the defendant Bankers Trust Company claims that it is not authorized to transfer the funds and securities without the consent of said Superintendent.   The defendant Superintendent of Insurance in his answer admits all the allegations of the complaint in so far as they refer to him and submits the facts to the consideration and judgment of the court.   The defendant Bankers Trust Company in its amended answer contests the right of the plaintiff company or of the plaintiff Rasor as its attorney in fact, to demand and receive the funds and securities, upon the ground that on or about December 1, 1918, under certain ordinances and decrees of the Russian Socialist Federated Soviet Republic (to be referred to herein as the Soviet *régime*) the plaintiff company was liquidated and nationalized, its property confiscated and its corporate existence terminated; that by reason thereof the individuals constituting its board of directors or officers became *functus officio* and ceased to have any right to represent the plaintiff company or to transact any of its business or to hold meetings or adopt resolutions; that all the acts of such individuals, subsequent to December 1, 1918, purporting to represent the plaintiff company as its board or officers, in relation to demanding and receiving back its American funds and securities, were null and void.   The defendant Bankers Trust Company, however, admits in its amended answer that the government of the United States has not recognized the Russian Socialist Federated Soviet Republic.   The most important question involved is whether the decrees of the Soviet *régime,* unrecognized by our government, have destroyed the existence of the plaintiff company and thus its right to sue.   The case also presents questions as to whether the individuals constituting the board of directors of the plaintiff company at the time the Soviet *régime* issued its decrees, continued to exist as a holdover board, and if so, whether they had power to act outside of Russia.   There are other and minor questions which require consideration.

*Frederick B. Campbell* [*Frederick B. Campbell* and *Paul C. Whipp* of counsel], for the appellants.

*Carl Sherman,* Attorney-General [*Edward G. Griffin,* Deputy Attorney-General, of counsel], for respondent Superintendent of Insurance.

*White & Case* [*Vermont Hatch, J. Du Pratt White* and *Ernest G. Fifield* of counsel], for the respondent Bankers Trust Company.

HINMAN, J.:

The plaintiff Russian Reinsurance Company was organized as a Russian corporation in 1895 under a charter, or " statute " as

it is called in Russia. In November, 1906, the directors of such corporation took appropriate action to make available the deposits required under the New York Insurance Law for commencing business in the United States. On the same day the plaintiff company executed to and with the Mercantile Trust Company of New York an indenture of trust and thereafter deposited with that trust company certain securities and cash to represent its capital in this country for the protection of American policyholders and creditors. The plaintiff company also made certain deposits with the defendant Superintendent of Insurance. The defendant Bankers Trust Company is the successor by merger of the Mercantile Trust Company and as such successor trustee now holds under the trust indenture the funds and securities which are the subject-matter of this action. In 1907, after fully complying with the requirements of the New York Insurance Law, the plaintiff company received authority to transact the business of fire insurance in this State. Its business was confined to reinsurance of fire risks. The company never had more than five policyholders in this country. These policies were held by five direct writing fire insurance companies and were known as " treaties." The last " treaty " came to an end on March 31, 1923, and on that date the company ceased to transact business in the United States except to liquidate its affairs and to cancel its outstanding obligations. All outstanding claims of any sort against the plaintiff company amount to the sum of $73,393.11. This includes a claim for taxes, a claim which is in litigation against a direct writing company for which the plaintiff company is reinsurer, and some other claims disputed by the plaintiff company on the ground that they arise outside the United States and have no connection with its United States business. The plaintiff company recognizes its duty to make suitable provision to secure its possible liability on all these outstanding claims. As security for these claims the Superintendent of Insurance has in his possession $65,000 par value New York city stock, the balance of the securities on deposit with him having been returned to the plaintiff Rasor as attorney in fact of the plaintiff company under an order of the Supreme Court, Special Term, Albany county, dated January 28, 1924. The securities and cash in the hands of the defendant Bankers Trust Company aggregate the sum of $714,187.50. The suggestion of the plaintiff company is that, in addition to the $65,000 held by the Superintendent of Insurance, the defendant trust company hold the sum of $10,000, or such other sum as the court may direct, as security for the outstanding claims of $74,393.11.

The plaintiff Rasor has been the United States manager of the

plaintiff company from the time of its admission to transact business in this State and his authority as such has been recognized by the Superintendent of Insurance down to the time of the bringing of this action. The license of the plaintiff company has been renewed annually by the Superintendent of Insurance to and including May 1, 1923. The plaintiff company has thus been permitted by this State to transact business here and the defendant Bankers Trust Company has dealt with it and with the plaintiff Rasor as its attorney in fact for about five years following the so-called confiscatory decrees of the Soviet *régime.*

The government of the Czar of Russia was overthrown and was succeeded by the Provisional or Kerensky government, which was recognized by the government of the United States on March 22, 1917. The Kerensky government was thereafter overthrown by the revolutionary Russian Socialist Federated Soviet Republic in the latter part of 1917. This Soviet *régime* has never been recognized by the United States. The Ambassador of the Kerensky government to the United States remained here until his duties were terminated at his own suggestion on June 30, 1922, since which time a member of the Kerensky embassy has been recognized as the legal custodian of the property of the Russian government in this country and his diplomatic status here remains unaltered. Our government has expressly refused to recognize the Soviet government.

Following the advent of the Soviet *régime* there was a " reign of terror " in Russia. According to the undisputed testimony of the witness Bernard, the managing director of the plaintiff company, the holding of stockholders' and directors' meetings was rendered impossible, the assembling of even two or three persons resulting in arrest and sometimes in death. He had seen such things happen before he escaped from Russia in August, 1918. The other directors of the plaintiff company also left Russia, including one who later went back and whose name is omitted from the record by stipulation in order to save him from danger if still living. These directors after leaving Russia held their meetings and conducted the business of the company in the city of Paris, France.

The last policy of the plaintiff company in this State having expired on March 31, 1923, the board of directors held a meeting in Paris on May 31, 1923, and unanimously adopted resolutions as follows: (1) A resolution authorizing the execution of a revocation of the deed of trust under which the defendant Bankers Trust Company is now acting as substituted trustee, subject to the rights of policyholders and creditors of the plaintiff company in the United States, and (2) a resolution authorizing the execution of a power of attorney in favor of the six directors who attended the

meeting, their survivors or survivor, empowering them to request, receive and give acquittance for the securities, cash or other property of the plaintiff company in the United States, including the funds and securities on deposit with the defendant Bankers Trust Company under the deed of trust, with full power of substitution. The meeting was attended by six out of the eight directors of the plaintiff company legally in office at the time of the advent of the Soviet *régime.* The last meeting of the shareholders was in March, 1917, at which time a portion of the directors was elected. Their terms were overlapping. The others had been legally elected prior to the last meeting of shareholders. It had been impossible to hold any meeting of shareholders of the company subsequent to 1917, and the terms for which all of the directors had been elected had expired prior to the meeting held in Paris in May, 1923. The seventh director legally in office as a holdover director at the time of the Paris meeting in May, 1923, has ratified all the proceedings of the meeting. The whereabouts of the eighth director is unknown. He is the one who went back to Russia. The statute or charter of the plaintiff company provides that three directors constitute a quorum.

A formal revocation of the deed of trust was executed pursuant to the resolution of the holdover board of directors. Also a power of attorney was executed pursuant to the other resolution of the board. Pursuant to the power of substitution contained in such power of attorney, the attorneys therein mentioned executed a substitute power of attorney to the plaintiff Rasor and Guaranty Trust Company, or either of them. The plaintiff Rasor duly demanded of the defendant trust company the funds and securities in question. This demand was not complied with for the reasons hereinbefore mentioned and which, with others require our consideration.

The trust deed, under which the defendant Bankers Trust Company is acting, contains the following provisions:

"*Sixth.* When and as often as it shall happen that the capital of the Company * * * shall exceed the amount of the capital for the time being required by the said Act or by the Superintendent of Insurance of the State of New York in proportion to the amount of the greatest single risk in the United States to which the Company shall be for the time being exposed then the Mercantile Trust Company shall on every request of the Company re-transfer and deliver to the Company such of the said bonds, mortgages and other assets and property as may be desired by the Company and permitted by the aforesaid Superintendent not exceeding in the whole the amount of such excess for the time being.

"*Seventh.* The said Russian Reinsurance Company of St. Petersburg reserves to itself the right to thereafter add to modify alter or revoke the trusts conditions and powers herein declared imposed or conferred in such manner as they shall think fit and as shall be according to law provided that the rights of their policyholders and creditors in the United States shall not thereby be affected or impaired."

The trial court has expressly found that the United States government has not accorded recognition to the Russian Socialist Federated Soviet Republic. The court has nevertheless given full force and effect to the alleged decrees of that government by a finding of fact to the effect that such decrees, or some of them, terminated the corporate existence of the plaintiff Russian Reinsurance Company and by conclusions of law to the effect that the Russian Socialist Federated Soviet Republic is the sovereign government of Russia and has terminated the existence of the plaintiff company. We think this was error. The Court of Appeals has had occasion to review three Russian cases involving the refusal of our government to recognize the Soviet *régime*, the last of which is *Sokoloff* v. *National City Bank of New York*, decided since the argument herein (239 N. Y. 158). In that case the plaintiff paid $30,225 to the defendant in the city of New York in June, 1917, upon the promise of the defendant to open an account in favor of the plaintiff in its Petrograd branch, and to repay him this sum in rubles at such times and in such amounts as he might demand. The account was opened and the plaintiff from time to time drew against it. In November, 1917, and again in February, 1918, checks for the balance were presented and dishonored. The defendant set up as a defense the revolution in Russia in November, 1917, resulting in the Soviet Republic; the nationalization by the Soviet *régime* of private banks organized under the laws of Russia; the forceful seizure of these banks, including the defendant's Russian branch and all of its property located there; the confiscation of all deposit accounts; the alleged intention of the parties that the performance of the agreement should be governed by the laws of Russia and by any orders or decrees of any government which might exercise authority therein; and that, therefore, the plaintiff's deposit account must be deemed to have been seized, his title thereto divested, and the defendant's liability discharged. The Court of Appeals held that the defenses were insufficient in law. Referring to its two previous decisions involving this Russian situation, Judge CARDOZO, writing for the court, said: "*Wulfsohn* v. *Russian Socialist Federated Soviet Republic* (234 N. Y. 372) decided that the government of Russia, though unrecognized, was

immune from suit in its corporate capacity at the instance of a plaintiff who asserted its existence as a government and sought to hold it to account for governmental acts within its territorial jurisdiction. *Russian Socialist Federated Soviet Republic* v. *Cibrario* (235 N. Y. 255) decided that the same government had no standing to sue as plaintiff in our courts till recognition was accorded. These judgments are not decisive of the case before us now. The Russian government is not here either as plaintiff or as defendant. A domestic corporation pleads the acts and mandates of that government to excuse a default and discharge an obligation." While the holding in that case is not decisive of the instant case, the opinion is suggestive of the principles that should govern, wherein the court says: " Juridically, a government that is unrecognized may be viewed as no government at all, if the power withholding recognition chooses thus to view it. In practice, however, since juridical conceptions are seldom, if ever, carried to the limit of their logic, the equivalent is not absolute, but is subject to self-imposed limitations of common sense and fairness, as we learned in litigations following our civil war. In those litigations acts or decrees of the rebellious governments, which, of course, had not been recognized as governments *de facto,* were held to be nullities when they worked injustice to citizens of the Union, or were in conflict with its public policy (*Williams* v. *Bruffy,* 96 U. S. 176, 187). On the other hand, acts or decrees that were just in operation and consistent with public policy, were sustained not infrequently to the same extent as if the governments were lawful ( *U. S.* v. *Insurance Companies,* 22 Wall. 99; *Sprott* v. *U. S.,* 20 Wall. 459; *Texas* v. *White,* 7 Wall. 700, 733; *Mauran* v. *Ins. Co.,* 6 Wall. 1; *Baldy* v. *Hunter,* 171 U. S. 388; cf. Dickinson, Unrecognized Governments, 22 Mich. L. R. 29, 42). These analogies suggest the thought that, subject to like restrictions, effect may at times be due to the ordinances of foreign governments which, though formally unrecognized, have notoriously an existence as governments *de facto.* Consequences appropriate enough when recognition is withheld on the ground that rival factions are still contending for the mastery, may be in need of readjustment before they can be fitted to the practice, now a growing one, of withholding recognition whenever it is thought that a government, functioning unhampered, is unworthy of a place in the society of nations. Limitations upon the general rule may be appropriate for the protection of one who has been the victim of spoliation though they would be refused to the spoliator or to others claiming under him. We leave these questions open. At the utmost, they suggest the possibility that a body or group which has vindicated by the course of events its pretensions to sovereign power, but

which has forfeited by its conduct the privileges or immunities of sovereignty, may gain for its acts and decrees a validity quasi-governmental, if violence to fundamental principles of justice or to our own public policy might otherwise be done. We think the defendant, though we were to assume the existence of such exceptions to the need of recognition, has not brought itself within them. There is room for debate whether relief from liability would follow if the acts set up in its answer were those of a government *de jure.* Whether that is so or not, we find no such injustice or impolicy in enforcing liability as to necessitate an exception to the rule that acts or decrees, to be ranked as governmental, must proceed from some authority recognized as a government *de facto.*"

Clearly enough, the general rule to be followed is that " acts or decrees, to be ranked as governmental, must proceed from some authority recognized as a government *de facto.*" The doubt is only as to possible limitations upon the general rule, where the questioned acts or decrees of an unrecognized government were " just in operation and consistent with public policy," or where " limitations upon the general rule may be appropriate for the protection of one who has been the victim of spoliation though they would be refused to the spoliator or to others claiming under him," or where " a body or group which has vindicated by the course of events its pretensions to sovereign power, but which has forfeited by its conduct the privileges or immunities of sovereignty, may gain for its acts and decrees a validity quasi-governmental, if violence to fundamental principles of justice or to our own public policy might otherwise be done." We see no necessity or justice in the instant case for applying any exception to the general rule. To permit the acts and decrees of the Soviet *régime* to gain a validity quasi-governmental in this case would do " violence to fundamental principles of justice " and " to our own public policy." Our government has deliberately and persistently refused to recognize the present Russian government because the existing *régime* there "is based upon the negation of every principle of honor and good faith, and every usage and convention, underlying the whole structure of international law, the negation, in short, of every principle upon which it is possible to base harmonious and trustful relations, whether of nations or of individuals." (*Russian Republic* v. *Cibrario,* 235 N. Y. 255, 264.) The decrees in question are not just in operation or consistent with our public policy, so far as the rights of either party to this litigation are concerned. To recognize their binding force would be to weaken still further the rights, as we would view them under our policy, of the plaintiff company, already the " victim of spoliation " under these very

decrees. So far as the rights of the defendant trust company are concerned, there is " no such injustice or impolicy in enforcing liability as to necessitate an exception to the rule." It is inconceivable that we should deny to the plaintiff company its rights by an exception to the general rule, where the sole effect of so doing would be to recognize that the " spoliator " of its property has succeeded to its rights. We cannot even contemplate that recognition of that government later would have such relation back to the time the wrongful act was done as to adversely affect the rights of the defendant trust company, in view of " the rule that public policy must always prevail over comity." (*Russian Republic* v. *Cibrario*, 235 N. Y. 255, 263.)

The trial court was in error in assuming to find that the unrecognized Soviet *régime* had become an independent sovereign State entitling its decrees to recognition in the courts of this State as matter of law. Until recognized by the appropriate department of our government, " the judicial tribunals of the country were bound to consider the old order of things as having continued." ( *Kennett* v. *Chambers*, 14 How. [U. S.] 38, 50, 51.) We may recognize as a fact that the plaintiff company cannot operate in Russia by virtue of such government as exists there. In that sense there is a *de facto* government there. But such recognition is one of fact without recognition as matter of law that the plaintiff company has lost all vitality, particularly outside of Russia. To hold to the latter proposition, we must give the recognition which our government has thus far withheld. Our conclusion is that the question of the existence and standing in this court of the plaintiff Russian Reinsurance Company is not affected by the alleged Soviet decrees. (*James & Co.* v. *Second Russian Insurance Co.*, 208 App. Div. 141, 142, 143; 210 id. 82, 84; *Bourne* v. *Bourne*, 209 id. 419, 427; *Joint Stock Co.* v. *National City Bank of N. Y.*, 210 id. 665; *Hennenlotter* v. *Norwich Union Fire Insurance Society, Ltd.*, N. Y. L. J. Oct. 28, 1924.)

In view of this holding we need not consider the further contention of the plaintiffs that in any event the Soviet decrees do not purport to effect the dissolution of the plaintiff company or to confiscate its property held outside the territorial jurisdiction of Russia. Moreover, in view of this holding, the issue tendered by the pleadings as to the existence and standing in this court of the plaintiff company is fully met. Under rule 93 of the Rules of Civil Practice, the corporate existence of a corporate plaintiff need not be proved unless the answer contains a specific allegation that the plaintiff is not a corporation. Here the answer bases the allegation that the plaintiff is not a corporation solely upon a given reason,

namely, that it was dissolved on or about December 1, 1918, by the ordinances and decrees of the ". Sovereign Government of Russia." And upon the trial the attorney for the defendant trust company expressly conceded that the plaintiff corporation does exist unless " this decree of the Soviet Government nullified it." We think the plaintiff company was not required to meet any burden of proof as to its existence beyond a refutation of the specific reason tendered by the answer and the admission at the trial. (*Joint Stock Co.* v. *National City Bank of N. Y., supra.*) The plaintiffs did not enlarge the issue by going unnecessarily into further proofs of its existence based upon presumption and estoppel; but even if that were so, the plaintiffs did make a *prima facie* case by proof of existence at a comparatively recent date aided by the presumption that the corporate existence once legally established still continues and by proof of a course of dealings with the plaintiff company as a corporate entity and with the plaintiff Rasor as its United States manager, by reason of which the defendant trust company cannot equitably be heard now to deny such corporate existence to escape liability on its obligation under the deed of trust received from that company. The findings of the trial court that the plaintiff company has ceased to exist and that the plaintiffs have not sustained the burden of proof of corporate existence should be vacated and set aside.

The trial court has made contradictory findings with reference to the status of holdover boards of directors under the Russian law and as to the right of directors of Russian corporations under Russian law to hold meetings outside of Russia. Unless it be shown that the Russian law is contrary to the law of the State of New York, this court will apply our own law. In *Monroe* v. *Douglass* (5 N. Y. 447, 452) the court said: " It is a well-settled rule, founded on reason and authority, that the *lex fori*, or, in other words, the laws of the country to whose courts a party appeals for redress, furnish, in all cases, *prima facie*, the rule of decision; and if either party wishes the benefit of a different rule or law, as, for instance, the *lex domicilii; lex loci contractus;* or *lex loci rei sitæ;* he must aver and prove it." (See, also, *Savage* v. *O' Neil*, 44 N. Y. 298, 301; *Hynes* v. *McDermott*, 82 id. 41, 47; *Schweitzer* v. *H. A. P. A. Gesellschaft*, 149 App. Div. 900, 903.) By judicial opinion and by statute in this State directors hold over after the end of their terms until their successors are elected. They become officers *de facto* at least and as such they can do acts binding the corporation. (Gen. Corp. Law, § 28; *People* v. *Runkle*, 9 Johns. 147; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 546, 557; *Van Amburgh* v. *Baker*, 81 id. 46, 48.) The policy of the State of New York with reference to the place of holding meet-

ings of directors of corporations is expressed in section 5 of the Stock Corporation Law,* wherein it is provided that if meetings are to be held only within the State the certificate of incorporation or by-laws must so provide. This statute seems to be declaratory of the general rule, in the absence of express prohibition. (*Galveston R. R. Co.* v. *Cowdrey,* 11 Wall. 459, 476; *Smith* v. *Alvord,* 63 Barb. 415, 423; 4 Cook Corp. [8th ed.] § 713a; 14-A C. J. 86, tit. Corporations, § 1845.) The plaintiffs and the defendant trust company in the case at hand, each called a witness to testify with reference to the Russian law. The plaintiffs' witness testified that the Russian law is not inconsistent with the law of this State as to the right of directors to hold office until their successors are elected and qualify or as to the right of a board of directors of a Russian corporation to meet outside of the territorial jurisdiction of Russia. We find the testimony of this witness more satisfactory than that of the defendants' witness both in respect to the qualifications of the witness and as to the testimony itself. The defendants' witness admitted that there is no Russian statute and no Russian decision holding that holdover directors are without power or that directors of a Russian corporation may not meet outside of the territorial jurisdiction of Russia. His attempt to construe the written statute or charter of the plaintiff company is merely his argument and not proof of Russian law. The construction of the statute is exclusively for the court. (*Bank of China, etc.,* v. *Morse,* 168 N. Y. 458, 470.) He testified orally as to general provisions of the Civil Code of Russia. This is not the proper way to prove a statute. (Civ. Prac. Act, § 391.) The defendant has failed to convince us that the Russian law is inconsistent with our law in the two respects in question. We find no provision in the statute or charter of the plaintiff company prohibiting directors from holding over until their successors are elected or forbidding the holding of meetings outside of Russia. Moreover, we are dealing with abnormal conditions created by a government unrecognized by us which has driven this fugitive board of directors to the extremity complained of. If the decrees of that government are not cognizable here to the detriment of this plaintiff company, it is justice, and not inconsistent with our law or any law of Russia proven in this case, to recognize the right of the victim of spoliation and other oppression to act whenever and wherever it may to protect the interests of its shareholders. These holdover directors became at least trustees to collect, preserve and defend the property of the corporation. The findings of the trial court that " under the law of Russia, the

---

* Formerly section 2 of the Business Corporations Law.— [REP.

Third Department, January, 1925.    [Vol. 211

acts of an overholding board of administration or directors are void " and that " the Russian law admits of no holding of meetings of directors of Russian corporations outside of the corporate place of residence of the board, as expressed in the charter," are disapproved.

.The finding of the trial court that " Neither the deed of trust between Russian Reinsurance Company and Bankers Trust Company nor any trust therein provided for has been revoked," is likewise disapproved. This finding is obviously based upon the holdings of the trial court to the effect that the Soviet decrees had dissolved the plaintiff company and that its holdover board of directors had no authority to function or to hold meetings outside of Russia. The trial court refused a requested finding of the defendant trust company that " The board of directors of Russian Reinsurance Company has no power to revoke the deed of trust between that company and Bankers Trust Company, dated November 18, 1906, or to demand accounting thereunder or receive the trust fund held thereunder." No exception has been taken by the defendant trust company to this refusal to find and such defendant is in no position to raise the question of the power of the board of directors to revoke the trust. Overlooking, however, in the interest of justice, this failure to except to this refusal to find, we are unable to say that the directors of the plaintiff company have no authority to collect and receive these funds and securities where the object of the trust has ended by the discontinuance by the company of business in America and under the other circumstances of this case. Under either provision of the trust agreement hereinbefore quoted, the directors were entitled, under our interpretation of the record, to obtain the return of the trust moneys and securities, subject to outstanding claims. Whatever may become of them thereafter is a matter of internal management of the corporation with which the defendants are not concerned.

The trial court has found as matter of law that " There is no comity existing between this country and Russia at this time and no corporation organized or existing under the State of Russia may maintain an action in the courts of the State of New York." That this is error follows almost as an incident to what we have already held. The plaintiff company being a pre-Soviet corporation unaffected by the decrees of that *régime*, as we have held, we " are bound to consider the ancient state of things as remaining unaltered." (*Gelston* v. *Hoyt*, 3 Wheat. 246, 324; *Kennett* v. *Chambers*, *supra*, 50, 51.) It exists as a foreign corporation unaffected by the Soviet decrees and as such may sue under the general provisions of our law relating to foreign corporations.

(Gen. Corp. Law, § 45, as added by Laws of 1920, chap. 916, formerly Code Civ. Proc. § 1779.) There is no special provision of law affecting the plaintiff company which specifically prescribes otherwise.

The plaintiff company is in existence. It is not disqualified to bring suit in the courts of this State and is the real party in interest to bring this suit. The plaintiff Rasor has been joined as an additional party plaintiff. It is difficult to see how he has any interest separate from that of his principal. This is a suit in equity, however, and in view of the fact that he is acting as attorney in fact and United States representative with power to sue in his own name or that of the company and is personally within the jurisdiction and that it may be desirable in this litigation to bind him personally by the decrees of the court, we are unwilling to say that he is not a proper party to the suit. If he has been improperly joined as a party plaintiff, the objection to such misjoinder coming at the trial was too late. (Civ. Prac. Act, § 278; Rules of Civil Practice, rules 102, 105.)

The judgment dismissing the complaint should be reversed upon the law and the facts and judgment granted in favor of the plaintiff Russian Reinsurance Company.

All concur.

Judgment reversed on the law and facts, and judgment directed in favor of the plaintiff Russian Reinsurance Company. The court disapproves findings of fact Nos. 16, 17, 23, 24, 27 and also finding No. 18 in so far as it implies that the plaintiff company has ceased to exist and finds in accordance with plaintiffs' proposed findings of fact Nos. 8, 12, 14 and 17 to 23 inclusive and plaintiffs' proposed conclusions of law Nos. 1 to 9 inclusive, except that such proposed conclusion of law No. 6 should be modified so as to provide that the plaintiff Russian Reinsurance Company is entitled to receive the securities and property in question by delivering the same to plaintiff Paul E. Rasor, as attorney in fact of said company, and that such proposed conclusion of law No. 8 should be modified so as to provide that the plaintiff Russian Reinsurance Company is entitled to judgment directing the defendant Bankers Trust Company to forthwith deliver the securities and property mentioned in said finding to the plaintiff Russian Reinsurance Company by delivering the same to plaintiff Paul E. Rasor, as attorney in fact of said plaintiff company.