McAvoy, J.
In the Legislature of the present year an act known as chapter 232 of the Laws of 1926 was passed and designated as section 169-a of the Civil Practice Act. Under this act any court of this State in which an action or special proceeding is pending, wherein it shall appear that the cause of action or a counterclaim, set-off or defense is founded upon or grows out of any contract of insurance made prior to November 7, 1917, by any insurance company organized under the laws of any State of the United States and ■expressed to be payable in Russian roubles or to be performed in whole or in part within the territorial confines of the former Russian Empire, upon application is directed to stay such action or special proceeding until the expiration of thirty days next following the recognition de jure of a government of Russia by the government <of the United States.
Before this legislation was enacted appeals were pending in this court from orders of the Special Term, denying defendant’s .application for a judicial stay in these same actions. The motions now here are for a stay in each of those actions in which such .appeals are pending as original applications under the new statute. The precise wording of the statute is as follows:
• " Section 1. The Civil Practice Act is hereby amended by adding thereto, at the end of article nineteen, a new section, to be section one hundred and sixty-nine-a, to read as follows:
“ § 169-a. Stay of action on insurance contract payable in Russian roubles. Whenever in any civil action or special proceeding now ■or hereafter pending in any court of this State, it shall appear that * * * any cause of action, counterclaim, set-off or defense is founded upon or grows out of any contract of insurance made or entered into prior to November seventh, nineteen hundred and seventeen, by any insurance company organized under the laws of any State of the United States and expressed to be payable in Russian roubles or to be performed in whole or in part within the territorial confines of the former Russian Empire, such action or special proceeding, upon application, as hereinafter provided shall be stayed by order of the court in which the same is pending .until the expiration of thirty days next following the recognition <de jure of a government of Russia by the government of the United ¡States. Such application may be made by any party against whom :such cause of action, counterclaim, set-off or defense is asserted rat any time after the commencement of the action or special proceeding and prior to the rendition of the judgment or final order .therein. * * *.
“ § 2. This act shall take effect immediately.”
The pending actions were instituted on April 20, 1925, and *70 arose out of claims based on two insurance policies in the endowment form issued to the plaintiff by the defendant company while it was engaged in business in Russia.
Action No. 1 is brought to recover upon a policy issued to plaintiff in 1901 and maturing in 1921. The suit is for the amount of the policy due under its terms, or in the alternative to recover the premiums paid on the policies.
Action No. 2 is brought to recover the cash surrender value of a policy issued to plaintiff in 1906, and has an alternative demand for relief as in the first action for the premiums paid.
The defendant is a New York corporation and repudiated the policies by a minute in its New York office signed by its secretary and by a letter issued from New York to the plaintiff signed by the same secretary in which it was stated for defendant that any action with respect to the payment of plaintiff’s claim, as a special exception to the general rule of non-payment of its Russian policies would have to be carried out at the home office in New York.
The defendant has not yet answered the complaints.
The declared purpose of this act, as indicated in defendant’s affidavits is to prevent the Soviet government from collecting on policies issued by American insurance companies because of the acts and decrees of that government in taking over the property, assets and business of these companies and in effect confiscating such property and assets, including the reserve held in Russia against the maturity of contracts of insurance made by these companies.
The plaintiff here, however, is not shown to have any connection with the Soviet government, nor to have acquired his policy from, through or under that regime. He has on the contrary been the owner and holder in his own right of both the policies sued on for many years and is in fact a refugee from Russia residing at present in France. Besides the contracts or policies provide that Russian policyholders were to share in the general assets of the company, not merely in the profits on Russian business. They are participants in the company’s earnings throughout the world. The insured is pledged as a fund for payment of his policy, not only the property of the company in Russia but “ all other property belonging to the company.”
It seems to us that this statute so indefinitely postpones a remedy upon the plaintiff’s contracts that it must be deemed unconstitutional in several aspects. But we rule primarily that it impairs the obligation of these contracts in their most important feature, for no contract can be held of any validity unless its enforcement may be carried on through the process which a government affords for compulsion of payment.
*71 It was stated by the learned writer Vattel in his work on "the Law of Nations: ” " A perfect right is that which is accompanied by the right of compelling those who refuse to fulfill the correspondent obligation. A perfect obligation is that which gives to the opposite party the right of compulsion.” (See Aycock v. Martin, 37 Ga. 124, 128, citing Vattel, p. LXII.)
Mr. Justice Swayne has aptly shown the status in which a contract is put if the remedy of its enforcement be impaired.
" Without the remedy, the contract may indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties, which depend for their fulfillment wholly upon the will of the individual.
“ The ideas of validity and remedy are inseparable and both are parts of the obligation which is guaranteed by the Constitution against invasion. The obligation of a contract ‘ is the law which binds the parties to perform their agreement.’ ” (White v. Hart, 13 Wall. 646, 653.)
Chief Justice Taney declared the rule that:
" Whatever belongs merely to the remedy may be altered according to the will of the State, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the Constitution. * * *
" It is manifest that the obligation of the contract, and the rights of a party under it, may, in effect, be destroyed by denying a remedy altogether; or may be seriously impaired by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing. And no one, we presume, would say that there is any substantial difference between a retrospective law declaring a particular contract or class of contracts to be abrogated and void, and one which took away all remedy to enforce them, or encumbered it with conditions that rendered it useless or impracticable to pursue it. Blackstone, in his Commentaries on the Laws of England, 1 vol. 55, after having treated of the declaratory and directory parts of the law, defines the remedial in the following words:
“ ‘ The remedial part of the law is so necessary a consequence of the former two, that laws must be very vague and imperfect without it. For, in vain would rights be declared, in vain directed to be observed, if there were no method of recovering and asserting those rights when wrongfully withheld or invaded.’ ” (Bronson v. Kinzie, 1 How. [U. S.] 311, 316, 317.)
The impairment of a remedy by a statutory stay may be *72 authorized for a limited period or for a reasonable time. Reasonableness must include definiteness if it is sought retroactively to restrain by legislative act the enforcement of contracts entered into on a precise date or those made prior thereto. The Legislature by this enactment placed a limitation upon the right of any insured person who has insurance payable in Russian roubles or whose policy is or was to be performed in the former Russian Empire until the happening of an uncertain event, and it thus abrogates the insured’s right under the contract to an immediate enforcement of his obligation, without offering any substitute whatever for this diminution of his rights.
The provision of article 1, section 10, subdivision 1, of the Constitution of the United States that “No State shall * * * pass any * * * law impairing the obligation of contracts ” is a mandatory direction which the Legislature may not ignore.
In McCracken v. Hayward (2 How. [U. S.] 608) it was pointed out that the effect of legislation is to be regarded no less than the letter. It was there said: “ There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party, to the injury of the other; hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution.”
This purported act of the Legislature is also obnoxious to the State Constitution as well as to the Federal Constitution, on another ground, in that it deprives the plaintiff in an action on such contract of property without due process of law within the meaning of section 1 of the Fourteenth Amendment to the Federal Constitution and of article 1, section 6, of the New York State Constitution. The right which a person possesses of - enforcing a legal claim against another is property under all the authoritative rulings and is within the meaning of these ■constitutional provisions. If a person is denied all remedy for the wrong inflicted upon him, the deprivation of his property becomes just as effectual as though it had been taken from him by legislative enactment. If the effect of an enactment of this character is to deprive plaintiff of .all .access .to .the courts, or after *73 entering court, to deprive him of the benefit of a fair judicial determination of bis rights, he has no protection for his property, and without due process of law he has been deprived of its beneficial enjoyment.
The contention of the defendant seems to be that while all this may be true with respect to citizens, it has no application to persons who are non-resident aliens, since they have no juridical remedy of suit in our courts at all, except through the privilege of comity which runs to the nation of their origin or citizenship and in the event of non-recognition of the government under which they dwell the nationals thereof are without the cognizance of the law courts. But since it is incontestably the general rule that “ the obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced ” {Louisiana v. New Orleans, 102 U. S. 203, 206), and the obligation of such a contract resides in its enforeibility at law, legislation of a State, though not the place of the contract, which destroys the right to the transitory action for its enforcement, if such right previously existed, impairs the obligation of the contract, because it destroys its enforeibility. In the instance now considered when the right under the contract arose it was enforcible and an action accrued thereon under the laws of this State. If this be not the law then this legislation is unnecessary because the courts would decline jurisdiction of the subject-matter of these actions if the right of action did not accrue imperatively from the liability of the defendant incurred under the terms of the policy contracts. But it is said that this right of action exists only ex comitate, and that we need not extend the favor arising out of comity to this litigant, but whether comity is the source or not is immaterial since at the time of accrual of the right the remedy did exist. When the obligations were incurred, the remedy of enforcement was imminent in their essence, and as we have seen, to .deprive one of remedy under the contract is to impair the obligations thereof. Under the generally accepted rules of international law the obligations of a contract are carried into any State or Nation where those obligations are sought to be enforced, and the liability for the breach of such contract also exists there and is enforcible by a plaintiff whenever he may bring the defendant within the jurisdiction of the courts of such State or Nation. It is said by a learned jurist in respect of this right to enforce within the State contracts made outside of a State, that the efficiency of the whole lex mercatoria depends upon the recognition of the principle that courts of every State will administer the law of contracts of every other State providing jurisdiction is obtained over the defendant.
*74 The ruling made in Russian Socialist Federated Soviet Republic v. Cibrario (235 N. Y. 255) is pointed to as authority for a finding that the right of an alien to sue in the courts of New York is a privilege and not property. That case involved the right of the Soviet government itself to sue in the State courts, and did not touch the right of a friendly alien domiciled in a friendly country to enforce his contract here. The court ruled there in effect that its decision was not applicable to alien corporations which asserted no sovereignty and individuals, and that as to such persons and corporate bodies the right to maintain actions in the New York courts had been “ so universally and for such a length of time ” allowed “ that the right to bring them in a proper case has become fixed ” and that “ so long as the plaintiff does not reside in a country at war with the United States we inquire no further. The original basis of the right has fallen’into the background.” This same contention that the right of a non-resident to sue in the courts of another State is a privilege merely and not property within the meaning of this clause of the Federal Constitution, was expressly raised and expressly overruled in Western National Bank v. Reckless (96 Fed. 70). Although it was intimated in the Cibrario Case (supra) that legislative fiat might restrain the remedy of enforcement such statement is under the stare decisis rule not to be conclusive of an unmooted question and hence is not a controlling pronouncement as to the power of the Legislature to impair the obligation of a previously existing contract which theretofore had remedial enforcement right in this State. We are of the opinion that the Cibrario case does not determine the particular question we have been considering.
The act here challenged does not purport to prevent the bringing of a suit upon these insurance claims. It operates merely upon actions that have already been instituted, its proposed effect being to suspend all proceedings after suit is brought. When an action is instituted in the State court the right of action becomes property within the State, and is then subject to the constitutional protection against its deprivation by any State law. We believe that the act operates as a deprivation of property within the State without due process of law.
It is likewise certain that this mandatory stay violates the equal protection clause of section 1 of the Fourteenth Amendment to the Federal Constitution, in that at the time of the institution of the suit, plaintiff was present within the jurisdiction and was entitled under the equal protection clause of that amendment to have his action determined in accordance with the same rules of law and procedure which the courts of this State would apply to any other action *75 of the same character. Aliens as well as citizens are entitled to this benefit. Its “ pledge of the protection of equal laws ” extends “ to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality.” (Yick Wo v. Hopkins, 118 U. S. 356.) This equal protection of the laws has been removed by this act since there can be no judicial determination of plaintiff’s rights for a period which is so indefinite as to amount to a complete foreclosure of the right to a recovery under his contracts. There is, therefore, discrimination with respect to individuals in the same class, and the statute arbitrarily singles out one class of creditors and penalizes them for no fault of their own and grants immunity from suit to specially .situated insurance companies’ debtors for no reason of public concern that is made manifest by the facts of this suit. We think it true, too, as asserted by the plaintiff, that this legislation is an interference with the judicial department of the State by the legislative branch of the government of the State in a matter which is wholly discretionary with the courts in that it directs the courts in actions which are already pending, to order stays which should be granted only on the merits thereof. It prescribes besides a method whereby defendant may halt actions in the courts in a particular class of cases contrary to the Constitution of the State (Art. 6, § 1) which grants all jurisdiction in law and equity subject to the appellate jurisdiction of the Court of Appeals to the Supreme Court. While the Legislature has power to alter or regulate the jurisdiction and proceedings in law and in equity that it has heretofore exercised, it may do so only, except as otherwise provided in the Constitution (Riglander v. Star Co., 98 App. Div. 101; affd., 181 N. Y. 531) and it certainly may not interfere so as to deprive the courts of all discretion and compel them to issue stays in all actions of this character without regard to the merits of the defense or the rights of plaintiff. The Legislature can only exercise such power in respect of proceedings in law and in equity as it has heretofore exercised, and it has never before attempted to deprive the courts of judicial discretion in respect of stays which they have theretofore been accustomed to grant or refuse according to the merits of the application.
We think the motions for a stay should be denied.
Clarke, P. J., Finch and Wagner, JJ., concur.
Motions denied.