BORIS N. SOKOLOFF, Respondent, *v.* THE NATIONAL CITY BANK OF NEW YORK, Appellant.

**Banks and banking — deposit in defendant bank in New York city to be paid to plaintiff in Russian rubles in Petrograd branch — confiscation of property and assets of said branch by Russian Socialist Federated Government — such confiscation no defense in action by plaintiff to recover unpaid balance of deposit — bank not bailee — relation of bank and depositor that of debtor and creditor — consideration on new trial of measure of recovery not foreclosed — complaint equivocal and election as to basis of action will determine result — doctrine of frustration inapplicable — interest.**

In 1917 the plaintiff paid to the defendant a sum of money upon its promise to open an account in favor of the plaintiff in its Petrograd branch, and to repay him this sum in rubles, and in this action to recover a balance alleged to be due, alleges that the account was opened; that the plaintiff from time to time drew against it; that later checks for the balance were presented and dishonored. The first defense is that there was a revolution in Russia in November, 1917, which resulted in the formation of the Russian Socialist Federated

Soviet Republic; that in the same month that government decreed the nationalization of all private joint stock banks organized under the laws of Russia or operating therein; that it took possession of such banks by force of arms and decreed that they be merged in the State Bank of Russia; that all the assets and liabilities of the liquidated banks were taken over by the State Bank acting for the Soviet government; that by force of said decree the government assumed the liability, if any, then owing to the plaintiff; that the defendant's Russian assets consisted of money on deposit in other banks, Russian State obligations, securities held in custody for clients, and certain other valuable assets; that the government following the seizure, proceeded to the liquidation of the banks whose activities it had ended; and that by a subsequent decree all deposit accounts were confiscated and were credited to the account of a revolutionary tax. The recital of these happenings is followed by an averment that the plaintiff was fully aware of the probability of future political and governmental changes, and that it was intended by the parties that the agreement should be performed in Russia and that the performance thereof should be governed by the laws of Russia and by any orders or decrees of any government which might exercise authority therein. By reason of these facts, the plaintiff's deposit account is said to have been seized, his title thereto divested, and the defendant's liability discharged. *Held, first,* that there is no such injustice or impolicy in enforcing liability as to necessitate an exception to the rule that acts or decrees, to be ranked as governmental, must proceed from some authority recognized as a government *de facto*. The defendant is not a bailee for the plaintiff, nor were any of its assets ear-marked to the plaintiff's use. *Second,* that the defendant's liability was unaffected by the attempt to terminate its existence and the seizure of its assets. The situation in a legal aspect is not changed by the fact that the property of the Russian branch has been scattered or despoiled, or though it be shown that the new or nationalized bank in appropriating the assets assumed the liabilities. There is no suggestion of a novation, releasing the defendant and substituting its successor. Its obligation as the primary debtor in its relation to its own creditors continued unimpaired. *Third,* the defendant gained nothing by the subsequent decree which confiscated the accounts of depositors as a " revolutionary tax," since at the time of this decree the Russian assets were already lost. *Fourth,* the contract with the plaintiff was not subject to the implied condition that the business of the branch in Russia would be permitted to continue. Such a condition has no bearing upon this action, in which the remedy is restitution. *Fifth,* the defendant is not benefited by the undisclosed intention of the parties that the agreement " should be performed

in Russia," and that " the performance thereof should be governed by laws of Russia and by the orders or decrees of any government which might exercise authority therein."

---

Consideration by the trial court of the measure of recovery is not foreclosed. The complaint is equivocal and election made or permitted at the trial as to whether the action is based upon the theory of rescission, with an accompanying right to restitution, or upon the theory of the breach of an outstanding contract, will determine the result. The doctrine of frustration will be inapplicable whether the contract be rescinded or affirmed. Since interest is not demanded for any period prior to the date of the dishonor of the. drafts, the defendant by enjoying the use of the money without interest has compensation for any intermediate banking facilities accorded to the plaintiff.

*Sokoloff* v. *National City Bank*, 208 App. Div. 627, affirmed.

(Argued October 2, 1924; decided November 25, 1924.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 4, 1924, which reversed an order of Special Term denying a motion to strike out the first and second separate defenses in the amended answer as insufficient in law and granted said motion.

The following questions were certified:

" 1. Is the first separate defense contained in the second amended answer herein sufficient in law?

" 2. Is the second separate defense contained in the second amended answer herein sufficient in law? "

*John A. Garver* and *Carl A. Mead* for appellant. Recognition of the Soviet Government is immaterial. (*Wulfsohn* v. *Russian Socialist Federated Soviet Republic*, 234 N. Y. 372; *Russian Socialist Federated Soviet Republic* v. *Cibrario*, 235 N. Y. 255; *Thorington* v. *Smith*, 8 Wall. 1, 8; *Horn* v. *Lockhart*, 17 Wall. 570; *U. S.* v. *Insurance Companies*, 22 Wall. 99, 101; *MacLeod* v. *United States*, 229 U. S. 416; *United States* v. *Palmer*, 3 Wheat. 610.) Instead of discharging its liability to the plaintiff by direct payment, the Soviet Government appropriated the

amount towards the payment of the extraordinary revolu-
tionary tax. This it had the right to do, in view of its
unlimited powers; and our courts will not disregard the
action of a *de facto* government. (*Oetjen* v. *Central
Leather Co.*, 246 U. S. 297; *Anonymous*, 1 Clayton, 129;
*Attorney-General* v. *Weeden*, 1 Thomas Parker, 267;
*Wright* v. *Nutt*, 1 H. Blackstone, 136; *Phillips* v. *Eyre*,
L. R. 6 Q. B. 1, 28; *Luther* v. *Sagor*, [1921] 3 K. B. 532.)
The principle or doctrine of frustration, or impossibility
of performance, terminates the contract without liability
of either contracting party to the other, where the failure
of performance is not caused by the default of either
contracting party. (*Paradine* v. *Jane*, Aleyn, 26; *The
Harriman*, 9 Wall. 161; *Robinson* v. *Davison*, L. R. 6
Exch. 269; *Wolfe* v. *Howes*, 20 N. Y. 197; *Spalding* v.
*Rosa*, 71 N. Y. 40; *Taylor* v. *Caldwell*, 3 B. & S. 826;
*Appleby* v. *Myers*, L. R. 2 C. P. 651; *Kerr* v. *Merchants'
Exchange Co.*, 3 Edw. Ch. 315; *Dexter* v. *Norton*, 47
N. Y. 62; *Kein* v. *Tupper*, 52 N. Y. 550, 555; *Goldman*
v. *Rosenberg*, 116 N. Y. 78; *Stewart* v. *Stone*, 127 N. Y.
500; *The Tornado*, 108 U. S. 342, 349, 351.)

*Morris Hillquit* for respondent. The " Russian Socialist
Federated Soviet Republic " is not recognized by the
courts of this country as a government *de jure* or *de facto*
or as a sovereignty in any sense, and its laws and decrees
are not accorded the force of foreign laws. (*Luther* v.
*James*, [1921] 1 K. B. 456; *Russian Republic* v. *Cibrario*,
198 App. Div. 869; 235 N. Y. 255; *Matter of S. S. Rodgai*,
278 Fed. Rep. 294; *The Penza, The Tobolsk*, 277 Fed.
Rep. 91; *Oetjen* v. *Central Leather Co.*, 246 U. S. 301;
*Jones* v. *United States*, 137 U. S. 202; *State of Yucatan*
v. *Argumedo*, 92 Misc. Rep. 547; *James & Co.* v. *S. R.
Ins. Co.*, 208 App. Div. 141.) Even if the Soviet Govern-
ment of Russia were a government *de facto*, its act in
seizing the defendant's Petrograd branch would not

11

relieve the defendant from the contractual obligations which it assumed to the plaintiff in this State. (*Richards & Co.* v. *Wreschner,* 174 App. Div. 484; *Tweedie Trading Co.* v. *McDonald Co.,* 114 Fed. Rep. 985.) The contract sued on was made in this State and its validity, obligation and legal effect must be determined by the laws of this State. (*Dyke* v. *Erie Ry. Co.,* 45 N. Y. 116; *Valk* v. *Erie R. R. Co.,* 130 App. Div. 450.) The " doctrine of frustration " upon which the motion was decided at Special Term does not apply to the case at bar. (*Krell* v. *Henry,* [1903] 2 K. B. 740; *Scottish Nav. Co.* v. *Souter,* [1917] 1 K. B. 222; *Appleby* v. *Myers,* L. R. [2 C. P.] 651; *Stewart* v. *Stone,* 127 N. Y. 500; *Lorillard* v. *Clyde,* 142 N. Y. 456; *Dolan* v. *Rodgers,* 149 N. Y. 489; *Herter* v. *Mullen,* 159 N. Y. 28; *B. & L. Land Co.* v. *Bellevue L. & I. Co.,* 165 N. Y. 247.) The plaintiff's account with the defendant was not susceptible of confiscation and was not and could not have been seized by the government of Russia. (*Williams* v. *Bruffy,* 96 U. S. 176.)

CARDOZO, J.  The case is here upon the pleadings.

In June, 1917, the plaintiff paid to the defendant, the National City Bank in the city of New York, $30,225 upon its promise to open an account in favor of the plaintiff in its Petrograd branch, and to repay him this sum in rubles at the rate of twenty-three and one-quarter cents per ruble, or a total of 130,000 rubles, at such times and in such amounts as he by his written orders might demand. The plaintiff, after stating this agreement, alleges that the account was opened; that the plaintiff from time to time drew against it, till the balance was reduced to $28,365 or 122,000 rubles; and that thereafter in November, 1917, and again in February, 1918, checks for the balance were presented and dishonored.

The questions certified to us for answer are directed to two defenses

The first defense states that there was a revolution in Russia in November, 1917, which resulted in the formation of the Russian Socialist Federated Soviet Republic; that in the same month the said government decreed the nationalization of all private joint stock banks organized under the laws of Russia or operating therein; that it took possession of said banks by force of arms and decreed that they be merged in the State Bank of Russia; that all the assets and liabilities of the liquidated banks were taken over by the State Bank acting for the Soviet government; that by force of said decree the government assumed the liability, if any, then owing to the plaintiff; that the defendant's Russian assets consisted of money on deposit in other banks, Russian State obligations, securities held in custody for clients, and certain other assets, of the value of over 240,000,000 rubles; that the liabilities of the said branch to its depositors were over 240,000,000 rubles; that the government following the seizure, proceeded to the liquidation of the banks whose activities it had ended; and that by a subsequent decree all deposit accounts were confiscated and were credited to the account of a revolutionary tax. The recital of these happenings is followed by an averment that the plaintiff was fully aware of the probability of future political and governmental changes, and that it was intended by the parties that the agreement should be performed in Russia and that the performance thereof should be governed by the laws of Russia and by any orders or decrees of any government which might exercise authority therein. By reason of these facts, the plaintiff's deposit account is said to have been seized, his title thereto divested, and the defendant's liability discharged.

The second defense is the same as the first except that it pleads the facts as a partial defense rather than a complete one.

The government of the United States refuses recognition of the Soviet Republic as the government of

Russia. Problems not easy to solve have followed in the wake of the refusal. We have had occasion to deal with some of them in cases recently before us. *Wulfsohn* v. *Russian Socialist Federated Soviet Republic* (234 N. Y. 372) decided that the government of Russia, though unrecognized, was immune from suit in its corporate capacity at the instance of a plaintiff who asserted its existence as a government and sought to hold it to account for governmental acts within its territorial jurisdiction. *Russian Socialist Federated Soviet Republic* v. *Cibrario* (235 N. Y. 255) decided that the same government had no standing to sue as plaintiff in our courts till recognition was accorded. These judgments are not decisive of the case before us now. The Russian government is not here either as plaintiff or as defendant. A domestic corporation pleads the acts and mandates of that government to excuse a default and discharge an obligation.

Courts of high repute have held that confiscation by a government to which recognition has been refused has no other effect in law than seizure by bandits or by other lawless bodies (*Russian Commercial & Industrial Bank* v. *Comptoir D'Escompte de Mulhouse*, [1923] 2 K. B. 630, 638; S. C., H. of L., 40 T. L. R. 837; *Banque Internationale* v. *Goukassow*, [1923] 2 K. B. 680; *Luther* v. *Sagor & Co.*, [1921] 1 K. B. 456; S. C., [1921] 3 K. B. 532; cf. *White, Child & Berney, Ltd.*, v. *Simmons*, [1922] 127 L. T. 571). It would be hazardous, none the less, to say that a rule so comprehensive and so drastic is not subject to exceptions under pressure of some insistent claim of policy or justice. In our own country, *Oetjen* v. *Central Leather Co.* (246 U. S. 297) and *Ricaud* v. *American Metal Co., Ltd.* (246 U. S. 304) are cited sometimes as pronouncements of equal generality, but in truth the point involved was narrower (31 Yale L. J. 535). Property in Mexico, hides and bullion, had been seized under requisitions by Villa and Pereyra, generals of Carranza. The ruling was that title had been thus divested, since, following the seizure, the Carranza

government had been recognized as the lawful government of Mexico. There was no occasion to determine whether, in default of recognition, a like effect would have been ascribed to a levy of contributions by a commander in the field (*O' Neill & Oetjen* v. *Central Leather Co.*, 87 N. J. L. 552; *Ford* v. *Surget*, 97 U. S. 594, 605. 606). We think the case at hand is not so governed by authority but that it may be dealt with upon principle.

Juridically, a government that is unrecognized may be viewed as no government at all, if the power withholding recognition chooses thus to view it. In practice, however, since juridical conceptions are seldom, if ever, carried to the limit of their logic, the equivalence is not absolute, but is subject to self-imposed limitations of common sense and fairness, as we learned in litigations following our Civil War. In those litigations acts or decrees of the rebellious governments, which, of course, had not been recognized as governments *de facto,* were held to be nullities when they worked injustice to citizens of the Union, or were in conflict with its public policy (*Williams* v. *Bruffy*, 96 U. S. 176, 187). On the other hand, acts or decrees that were just in operation and consistent with public policy, were sustained not infrequently to the same extent as if the governments were lawful (*U. S.* v. *Insurance Companies*, 22 Wall. 99; *Sprott* v. *U. S.*, 20 Wall. 459; *Texas* v. *White*, 7 Wall. 700, 733; *Mauran* v. *Ins. Co.*, 6 Wall. 1; *Baldy* v. *Hunter*, 171 U. S. 388; cf. Dickinson, Unrecognized Governments, 22 Mich. L. R. 29, 42). These analogies suggest the thought that, subject to like restrictions, effect may at times be due to the ordinances of foreign governments which, though formally unrecognized, have notoriously an existence as governments *de facto.* Consequences appropriate enough when recognition is withheld on the ground that rival factions are still contending for the mastery, may be in need of readjustment before they can be fitted to the practice, now a growing one, of withholding recognition whenever it is thought that a government,

functioning unhampered, is unworthy of a place in the society of nations. Limitations upon the general rule may be appropriate for the protection of one who has been the victim of spoliation though they would be refused to the spoliator or to others claiming under him. We leave these questions open. At the utmost, they suggest the possibility that a body or group which has vindicated by the course of events its pretensions to sovereign power, but which has forfeited by its conduct the privileges or immunities of sovereignty, may gain for its acts and decrees a validity quasi-governmental, if violence to fundamental principles of justice or to our own public policy might otherwise be done.

We think the defendant, though we were to assume the existence of such exceptions to the need of recognition, has not brought itself within them. There is room for debate whether relief from liability would follow if the acts set up in its answer were those of a government *de jure.* Whether that is so or not, we find no such injustice or impolicy in enforcing liability as to necessitate an exception to the rule that acts or decrees, to be ranked as governmental, must proceed from some authority recognized as a government *de facto.* The defendant is not a bailee for the plaintiff, nor were any of its assets ear-marked to the plaintiff's use. If that were its position, there would be other tests of liability. Surrender to overwhelming force would excuse the loss or destruction of the subject of a bailment whether the force that overwhelmed was legitimate or lawless. That is not the case before us. The *res* belonging to the plaintiff was not a physical object committed to the defendant's keeping, but an intangible right, a chose in action, the right to receive rubles in the future under an executory contract. This contract the defendant has not performed, yet it refuses to return the dollars that were paid to it by the plaintiff upon its promise of performance. Two acts that must be kept distinct in thought are said to justify

this refusal.    One is the decree nationalizing the banks of Russia with the accompanying seizure of their assets. The other is the later decree confiscating the accounts of the depositors as a " revolutionary tax."

The defendant's liability was unaffected by the attempt to terminate its existence and the seizure of its assets. A government of Russia *could* not terminate its existence either by dissolution or by merger, for it was a corporation formed under our laws, and its corporate life continued until the law of its creation declared that it should end. What a Russian government could do was to deprive it of the privilege of doing business upon Russian soil. But the ending of its Russian business was not the ending of its duty to make restitution for benefits received without requital.    As to this, there would be no dispute if its assets had been left intact.    The situation in a legal aspect is not changed by the fact that the property of the Russian branch has been scattered or despoiled. Plaintiff did not· pay his money to the defendant, and become the owner of this chose in action, upon the security of the Russian assets.    He paid his money to a corporation organized under our laws upon the security of all its assets, here as well as elsewhere.    Everything in Russia might have been destroyed by fire or flood, by war or revolution, and still the defendant would have remained bound by its engagement.    The plaintiff had no means of knowing whether the assets physically in Russia were large or small.    He might fairly assume, if he gave thought to it at all, that the reserve in cash or bullion at the disposal of the Russian branch would be only a small proportion of the Russian liabilities.    Even now, the defendant does not state that it kept any more rubles or securities in Russia after its agreement with the plaintiff than before.    It states, indeed, that its Russian assets were over 240,000,000 rubles and that its Russian liabilities were over that amount, but it does not state that the excess was the same for each.    If assets physically

in Russia were less than liabilities, the defendant would be making a profit by the process of cancellation. The defense becomes the more untenable when we mark the description of the assets seized. They consisted in part of securities held for clients. As to these, the defendant occupied the position of a bailee, with the result that the loss may have been the clients' rather than its own. Other classes of assets were moneys in other banks and obligations of the Russian state. If the defense were to prevail, the loss sustained by the defendant through these unfortunate investments would be shifted from itself and cast on its depositors. The situation is not changed though it be shown that the new or nationalized bank in appropriating the assets assumed the liabilities. Upon that head, the answer is lacking in certainty and precision. If, however, the defendant be given the benefit of the most favorable construction, there is still no suggestion of a novation, releasing the defendant and substituting its successor. Very likely, the defendant, upon payment of the plaintiff's claim, would have been subrogated to his rights under the covenant of assumption, if such a covenant there was. Its obligation as the primary debtor in its relation to its own creditors continued unimpaired.

If merger and seizure of assets do not avail as a defense, the question remains whether the defendant gains anything by the subsequent decree which confiscated the accounts of depositors as a "revolutionary tax." At the time of this decree, the Russian assets were already lost. The defendant did not surrender them or any part of them for the purpose of discharging a tax or other liability imposed on its depositors. The question is not here whether credit would have to be allowed if payment had been made for such a purpose out of assets that would otherwise have been retained by the depositary. The ruling of the Supreme Court in *Williams* v. *Bruffy* (96 U. S. 176) suggests the difficulties that even then would have to be surmounted. Certain we think it is that a

decree of confiscation directed against depositors does not reduce the liabilities of a bank which has already yielded up its assets in virtue of a decree of confiscation directed against itself. In such a situation the later decree, if it is to be given any effect at all, must speak the voice of a power recognized by us as sovereign. Troublesome questions of situs and of jurisdiction would even then remain. The intangible chose in action, at least when it is the result of a deposit in a bank, has for some purposes a situs at the residence or place of business of the debtor, though the creditor be far away (*Blackstone* v. *Miller*, 188 U. S. 189; *Security Bank* v. *California,* 263 U. S. 282; *Matter of Houdayer*, 150 N. Y. 37; cf. *Direction der Disconto-Gesellschaft* v. *U. S. Steel Corp.*, 300 Fed. Rep. 741, 746). The debtor in this instance, though domiciled in the United States, may have had what was equivalent to a residence in Russia while it was doing business at its Russian branch. There is doubt whether its residence in Russia can be said to have continued after its branch had been seized and its business had been closed (cf. *R. C. & I. Bank* v. *Comptoir, etc., supra; Banque Internationale* v. *Goukassow*, [1923] 2 K. B. 680; *White, Child & Berney, Ltd.*, v. *Simmons*, [1922] 127 L. T. 571). The decision of this case does not require that such doubts should be resolved. If there is jurisdiction in these conditions to confiscate the incorporeal right, no power short of sovereignty in all its plenitude has a competence so high.

The defendant places some reliance upon the doctrine of frustration. The contract with the plaintiff was subject, it is said, to the implied condition that the business of the branch in Russia would be permitted to continue. Such a condition might be important if the plaintiff were claiming damages. It has no bearing upon this action, in which the remedy is restitution (*Cantiare San Rocco* v. *Clyde Shipbuilding & Eng. Co.*, 1924, A. C. 226; *Dolan* v. *Rodgers,* 149 N. Y. 489; 2 Williston, Contracts, § 885).

The plaintiff paid his money upon the faith of the defend-ant's promise that an equivalent amount in rubles would be paid to him thereafter. The consideration fails to the extent that performance is frustrated.

The defendant's last reliance is upon the intention of the parties. Nothing in its statement of that intention exempts from liability. It was "intended" by the parties that the said agreement "should be performed in Russia," and that "the performance thereof should be governed by the laws of Russia and by the orders or decrees of any government which might exercise authority therein." Two defects at least make this statement insufficient:

(a) If the obligations of the parties were varied by agreement, the making of that agreement is the ultimate and issuable fact which should have been stated in the answer. There is a studious omission to make any statement of the kind. Instead there is an averment of intention, which for all that appears was undisclosed by word or deed. "Assent in the sense of the law is a matter of overt acts, not of inward unanimity in motives, design or the interpretation of words" (HOLMES, J., *O'Donnell v. Clinton,* 145 Mass. 461; *White* v. *Corlies,* 46 N. Y. 467; 1 Williston, Contracts, § 95; Anson, Contracts, § 34).

(b) If an intention undisclosed were equivalent to one revealed, what has happened is not fairly within the range of what is said to have been foreseen. These decrees do not regulate the performance of the agreement. They wipe the agreement out and annul its obligation. Performance has been thwarted. Restitution remains due.

The order should be affirmed with costs, and the questions certified answered in the negative.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Order affirmed.