G. Frank Dougherty, Plaintiff, *v.* The Equitable Life Assurance Society of the United States, Defendant.

Supreme Court, New York County, October, 1929.

104

*Engelhard, Pollack, Pitcher & Stern* [*Walter H. Pollack* and *Ruth I. Wilson* of counsel], for the plaintiff.

*Davis, Polk, Wardell, Gardiner & Reed* [*John W. Davis, William C. Cannon, David E. Hudson* and *William R. Carlisle* of counsel], for the defendant.

COTILLO, J. The actions are brought against defendant by an assignee of policyholders upon polices issued by it upon the life of a citizen and resident of the Russian Empire as it formerly existed, pursuant to the laws in force at the time permitting defendant to transact life insurance business in that domain. An understanding of the nature of the defenses directed to the complaint requires some treatment of the sequence of events which gave rise to the actions.

The defendant, a life insurance society organized and existing under the laws of the State of New York, was, on July 7, 1889, authorized and permitted to conduct a life insurance business in the Russian Empire by special law and regulations of that country. The law and regulations required the defendant to conduct its Russian business through a branch to be located in St. Petersburg, which name was later changed to Petrograd, and thereafter to Leningrad. It was required, so long as any policies issued in Russia should be outstanding, to maintain in the Russian State Bank, or other designated government depositary, a deposit in the form of cash, Russian government bonds or interest-bearing securities guaranteed by the Russian government, to the amount of 500,000 roubles. Independently of this security the defendant was required to deposit monthly in the Russian State Bank in the same kind of securities, reserve sums to the amount of thirty per cent of all premiums received from the assured in Russia.

At the end of the financial year a recalculation was to be made, and such further sums paid as would be necessary to assure a "reserve fund" adequate at all times to guarantee the prompt payment of liabilities incident to defendant's Russian policies. A "reserve capital" was also required by a deposit to the amount of ten per cent of the net profits of the defendant's operations in Russia. The establishment and maintenance of this reserve fund and reserve capital was required as a guaranty of the defendant's obligations in Russia.

It was further provided in the aforementioned law and regulations that the life insurance operations conducted by the defendant in Russia should be effected in Imperial Russian paper roubles. The kinds of policies defendant might issue were also prescribed with conditions of those policies particularly stated. All disputes which might arise in connection with the insurance operations carried on in Russia were to be settled according to the Russian law and in Russian courts of justice, and it was expressly provided that this defendant should be amenable to the laws of the Russian Empire having reference to its business and "likewise to all future laws," and also that the permission granted to the defendant to conduct an insurance business in Russia might at any time be withdrawn and canceled at the direction of the government, without any explanation. In such case, the defendant immediately was to liquidate its business and settle its accounts in the manner that should be indicated to it by the Russian government. A copy of the aforementioned laws and regulations as from time to time revised, but always embodying the aforementioned provisions and requirements, was printed under the heading "Policy Rules of the Equitable Life Assurance Society of the United States" on the back of each and every policy of insurance issued by this defendant in Russia, and on the face of every policy it was expressly provided that all provisions and rules, approved by the Minister of the Interior on July 28, 1890, printed or written by the defendant upon the back of the policy, were accepted by the insured as part of the contract as fully as if they were recited at length over the signatures thereto affixed.

After the promulgation of these laws and regulations and pursuant thereto, the defendant established a branch office at St. Petersburg and thereafter conducted through that office a life insurance business in Russia, until on or about December 14, 1918. It conformed to and obeyed all the laws and regulations of the Russian government in conducting its business and employed *all* premiums received by it in respect of its Russian policies for the maintenance of the "reserve fund" for the benefit and protection of the holders

of and beneficiaries under the defendant's Russian policies and for the maintenance of the " reserve capital," and at no time transferred out of Russia any interest, income, profit or moneys whatsoever arising from its Russian premiums, assets or business, except to finance the purchase of Russian bonds in order to maintain the said " reserve capital " and " reserve fund."

Up to and including November 7, 1917, the government of Russia was fully recognized by and enjoyed diplomatic intercourse with the government of the United States of America. On or about that day the then Russian government, popularly known as the Kerensky government, was replaced by the government of the Russian Socialist Federated Soviet Republic (hereinafter referred to as the R. S. F. S. R.). It was the sole sovereign government of that portion of Russia which had been subject to the jurisdiction of the preceding government. Until about July 6, 1923, when the Union of Soviet Socialist Republics (hereinafter referred to as the U. S. S. R.) was formed, it was the sole government clothed with power to enforce its authority within its own territory and obeyed by the people, capable of performing the duties and fulfilling the obligations of an independent power and able to enforce its claims by military force, and it effectively and exclusively exercised therein all the functions of sovereignty. It has, up to the present time, continued to possess and exercise said sovereignty, except certain limited powers delegated by it to the U. S. S. R., and such sovereign status has been recognized and accepted by Russian nationals. The governments of the R. S. F. S. R. and the U. S. S. R. have been recognized as *de jure* governments by the governments of numerous sovereign States that belong to the family of civilized nations recognized by the United States of America, but the United States of America has not extended recognition to the U. S. S. R. or the R. S. F. S. R. governments.

On or about December 1, 1918, the R. S. F. S. R., the then Russian *de facto* government, duly enacted and promulgated a decree declaring that the business of life insurance within Russia should thereafter be an exclusive monopoly of the State, and that every private insurance company then doing a life insurance business in Russia, including the defendant, should forthwith surrender to the Russian government all its assets in Russia and submit to a complete liquidation, whereupon and whereby the company should be fully and completely discharged from all liability in respect of its former insurance policies, including the policy referred to in the complaint. In the said decree it was further provided that the conduct of the insurance business thus taken over by the Russian government was to be intrusted to a commission established by

the government, consisting of representatives of named departments of the Russian government. It was further provided that the liquidation called for and the assumption of the management of the insurance business by the commission described above, should be terminated not later than April 1, 1919. Subsequent decrees and regulations of this commission and of the Russian government directed the Russian policyholders to pay premiums directly to the commission, and to look to the commission for payment of whatever benefits might be or become due and owing to them because of policies which they had held with former private insurance companies, including this defendant.

Pursuant to the decree of December 1, 1918, the Russian authorities penetrated the offices of the defendant in St. Petersburg on the night of December 13, 1918, and sealed the entrance to said offices. These remained closed until December 24, 1918, when the said government, acting by official representatives of the liquidating commission, entered the offices of the defendant, took possession of all the defendant's assets, books of account and office equipment, and assumed complete charge and control of the business and of the premises. Pursuant to the same decree, the government, acting by official representatives of the liquidating commission, confiscated all the assets of the defendant in Russia, ncluding the deposits on account of the reserve fund and reserve capital hereinbefore described, together with such other deposits and bank accounts as the defendant maintained in Russia. Pursuant to orders of the official representatives of the liquidating commission the postal authorities delivered to them all mail addressed to the defendant. The commission directed the banks to consider the commission, as agent of the R. S. F. S. R., the owner of all rights and property theretofore held by the defendant. From December 13, 1918, the business of the defendant's former Russian branch office was conducted entirely under the command, direction and complete control of the official representatives of the Russian government. The defendant's former general manager and certain other employees were compelled to remain as agents and employees of the Russian government, to carry on the work of liquidation of the defendant, and substitution of the Russian government in the place and stead of the defendant. The defendant's connection with and control over its former St. Petersburg (Petrograd) branch and all its operations, was completely terminated upon the entrance of the representatives of the Russian government, acting through the liquidating commission, on or about December 14, 1918, in pursuance of the decree of December 1, 1918. The Russian Soviet government assumed and promised

to discharge all obligations, if any, of the defendant with respect to its Russian policies of insurance, including the policy referred to in the complaint, and continued to conduct the business of life insurance in Russia as an exclusive monopoly of the State, and received premiums payable in respect of defendant's Russian policies, and made payments due in respect of such policies; and the Russian Soviet government through its liquidating commission, thereupon became, for all purposes, substituted for the defendant in respect of its Russian policies as aforesaid, and all persons insured were debarred from asserting any further liability of the defendant arising out of said Russian policies.

On or about March 4, 1919, the government of Russia duly enacted and promulgated a decree whereby it was provided that the former owners of all businesses and enterprises which had been nationalized, sequestrated or liquidated by the government (including the business of insurance theretofore conducted by the defendant in Russia) should be released from all obligations to private individuals and enterprises, which obligations had arisen in connection with the conduct of their business in Russia prior to the nationalization, sequestration or liquidation of such enterprises.

On or about November 18, 1919, a further decree was promulgated in which it was provided that life insurance in all its forms was canceled, that all contracts entered into with insurance companies for the sake of life insurance (including the policy referred to in the complaint), were canceled and annulled, and a system of social protection established under the ". Commissary of the People for Labor and Social Protection" for all persons and dependents deprived of the benefit of insurance by virtue of such cancellation and annulment. All premium deposits and funds representing the accumulation of premiums (including the assets representing the accumulation of premiums upon the insurance business of the defendant in Russia, which had theretofore been taken over by the Russian government) were to be transferred into the general treasury of the State. Such deposits or funds were so transferred, and were applied by the Russian State to the maintenance and operation of social protection and governmental insurance for the benefit of all persons subject to the jurisdiction of such government, including the insured herein. By a decree of November 11, 1922, all private rights and obligations which had existed prior to November 7, 1917, or which arose out of transactions entered into prior to that date, were annulled and rendered unenforcible in the courts or any other tribunals of the State; and persons who had been the owners of such rights ceased to have any right, title or interest therein as fully for all purposes as though such rights had never

existed or come into being and as though such transactions had never occurred.

Plaintiff, an American citizen, as the assignee of Russian policyholders, is now attempting to enforce the obligations under the policies in the courts of this State. To these actions eleven affirmative defenses are interposed. The first, second, fifth, sixth, tenth and eleventh alone need be considered, the remainder having been withdrawn either upon the argument or in the brief submitted by the defendant.

The first defense, after reciting the conditions of the contract and the history of the events succeeding the revolution, pleads a valid substitution of the liquidating commission of the Soviet government in place of the defendant in respect of its Russian policies; the second defense relies upon the specific decree of the Russian government to that effect. The fifth defense pleads a failure of plaintiff to comply with certain conditions precedent. In the sixth defense it is pleaded that plaintiff cannot maintain this action because of the provisions of the policy which make all law suits subject to the jurisdiction of St. Petersburg courts of justice. The tenth defense relies upon frustration of the contract by superior force, which it is alleged is a good defense under Russian law. The eleventh defense pleads that the insured and those claiming under him were outside of Russia at the time defendant's obligation under the policy arose; and by Russian decree it was illegal to transfer moneys from Russia on account of any transaction had in Russia without the consent of the public authorities; and such consent has not been obtained.

Plaintiff's motions to strike out as legally insufficient the affirmative defenses not only admit, for the purposes hereof, the truth of the allegations of such defenses, but also bring into question the sufficiency of the complaints which defendant now challenges. (*Small* v. *Sullivan*, 245 N. Y. 343, 348.) It is clear that both complaints are technically defective by reason of plaintiff's failure to aver that he or his assign was ready, willing and able to perform the conditions which, it is alleged, defendant, by its act, prevented or waived. There is no allegation in action No. 4 of due performance of conditions precedent. The law is well settled in cases of anticipatory breach that while lack of actual tender of performance may be excused, plaintiff must allege that he was ready and willing to make it had it been required. This is an essential element which cannot be omitted. (*Strasbourger* v. *Leerburger*, 233 N. Y. 55, and cases cited, p. 60.) It is urged by defendant that the complaint in action No. 4 should be dismissed by reason of joinder of inconsistent causes of action, contrary to the provisions of

section 258 of the Civil Practice Act. While this is probably true, I do not think that defendant can ask such relief upon this motion, by reason of the express provisions of section 278 of the act. (*Gallagher* v. *Finch, Pruyn & Co.*, 212 App. Div. 847.) The second cause of action set forth in the complaint in action No. 4 seeks a recovery of *all* premiums paid. Such a recovery cannot be had where a valid policy has been issued and a risk assumed by the company. This, however, goes to the amount of recovery and not to the right to maintain the action.

It appears, however, that plaintiff's difficulties on these motions are deeper rooted than lack of technical allegations which might be supplied by further pleading. A denial of his motions predicated on the insufficiency of the complaints would probably fail to settle the real issues raised by his motions to dismiss the defenses.

It is clear that defendant has lost all of its assets in Russia, against which was written the policy in suit. Such policy was a Russian contract, made and to be performed there. Plaintiff's assignor was a Russian citizen, amenable to its laws and subject to the rights, privileges and liabilities caused by a change of the form of government. Unless there is clear reason to the contrary, such an individual, or his assignee, should not be permitted to enforce the Russian policy, written against Russian assets, at the expense of American policyholders, who have no possible recourse to that fund. Plaintiff contends that the question here presented is identical with that decided by the Court of Appeals in *Sokoloff* v. *National City Bank* (239 N. Y. 158). That position cannot be sustained. In the case cited, as well as other cases involving banks in Russia, there was a complete confiscation of the business and assets of the banks. In the case at bar the action of the Russian government was one of liquidation of defendant's business and government operation thereof as a monopoly. No confiscation of assets was decreed in so far as Russian policyholders are concerned. In view of the expressions found in the later decision of the Court of Appeals in *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149) it is clear that the *Sokoloff* decision was intended to be confined to the facts of that particular case. In my opinion it is not applicable to the case at bar where the government has not confiscated assets, but decreed that the business be *continued* as a government enterprise. By a later decree, upon which the second defense is predicated, the Russian government, after completing the liquidation of defendant's insurance business, to the end that it should be continued by the government, released defendant from any liability by reason thereof. Under these circumstances plaintiff should not have recourse to assets outside of Russia until after

recourse to the fund against which the policy was written has been exhausted. Such is surely the fair and equitable rule, even though not, perhaps, expressly covered by any specific provision of the policy or of statute. Defendant, in seeking Russian business, was prohibited from making any reference to assets not located within Russian boundaries. I am of the opinion that the act of the existing Russian government, in taking over the life insurance business conducted there by defendant, and passing laws protecting Russian policyholders, was binding on plaintiff's assignor, a resident of that country, and hence upon plaintiff. The well-reasoned opinion of Judge GODDARD in *Banque de France* v. *Equitable Trust Company* (33 F. [2d] 202) is quite in line with the trend of thought expressed by our Court of Appeals in *Russian Reinsurance Co.* v. *Stoddard* (*supra*), although perhaps going a step further. He points out that justice may require courts of this country to give effect to laws of a country whose existence has not been officially recognized by our government. Such is clearly the case here, and the provisions of the liquidation statutes relied upon in the first and second defenses are binding upon plaintiff's assignor and afford him his only present relief. These defenses are sufficient in law, and, if established, must defeat the action.

The fifth defense of failure to perform conditions precedent must also be upheld. The subject was briefly mentioned in discussing the sufficiency of the complaint and what was said there is applicable here. The failure to pay premiums, if established, will void the policies, and the validity of the special conditions upon which plaintiff relies to defeat this result, will have to be tested by the Russian law. Whatever may be the result upon the trial, the fifth defense is adequate for the purposes of this motion. The alleged waiver of defendant, being a matter of intent, raises a factual question which cannot be ruled on here adversely to defendant. (*Alsens A. P. C. Works* v. *Degnon Cont. Co.*, 222 N. Y. 34, 37.)

The sixth defense and the motion to dismiss raise the question of the effect of the policy clause providing that all disputes arising in connection with defendant's Russian operations shall be settled according to Russian laws and in Russian courts of justice. While agreements ousting courts of jurisdiction were formerly not looked upon with favor in this State, there is a present tendency to permit to contract more freely with reference thereto. In view of the fact that the policy was issued in Russia to a citizen thereof, both policy and insured being amenable to Russian enactments and to the jurisdiction of its courts, no good reason appears for reverting to the early strict rule against such provisions.

The courts of this State might well decline to assume jurisdiction in view of this clause and the surrounding circumstances. The decision in *Sliosberg* v. *N. Y. Life Ins. Co.* (125 Misc. 417; 217 App. Div. 685) involved a clause materially different from the one here presented, and is not decisive of the question now raised. The exclusive jurisdiction of Russian courts is made mandatory not so much by the agreement of the parties as by the statutes under which defendant was permitted to do business, and it seems incongruous to permit one standing in the shoes of a citizen of the country promulgating such a statute to claim that the courts of this State should disregard it. The situation is such a one as was contemplated in *Meacham* v. *Jamestown Railroad Co.* (211 N. Y. 346), wherein the court said: " There may conceivably be exceptional circumstances where resort to the courts of another State is so obviously convenient and reasonable as to justify our own courts in yielding to the agreement of the party and declining jurisdiction." To relieve plaintiff of a mutual obligation from which defendant could not be relieved is to do violence to the spirit of former decisions. The sixth defense, therefore, cannot be dismissed.

The tenth defense of frustration must be upheld for the reasons which govern the disposition of the first two defenses. These reasons have been fully considered by the King's Bench in an opinion promulgated after a full trial, on April 29, 1929, in the case of *Perry* v. *Equitable Life Assurance Society of the United of America.* The views there expressed by Mr. Justice BRANSON are fully in accord with those announced here. The same doctrine applies to the eleventh defense which pleads the provision of the policy for payments thereunder out of Russian assets and the decrees prohibiting the transfer out of the country of any such assets. If I am correct in my rulings upon the first two defenses, the tenth and eleventh must likewise be held good.

Plaintiff's motion to dismiss the first, second, fifth, sixth, tenth and eleventh defenses is denied. The third, fourth, seventh, eighth and ninth defenses are dismissed upon defendant's stipulation. The motion to dismiss the complaint for failure to allege performance of conditions precedent and to allege readiness, willingness and ability to perform conditions prevented by defendant or waived by it is granted with leave to serve an amended complaint, and denied in all other respects. Settle order.